FREDERICK J. FOLDEAK ET AL. v. FRANK INCERTO ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CV-1-688-15535

Argued April 6—decided June 5, 1970

*Francis J. DiScala,* of Norwalk, for the appellants (defendants).

*Thomas A. Flaherty,* of Norwalk, for the appellees (plaintiffs).

DEARINGTON, J. In their complaint the plaintiffs set forth two counts and rely on General Statutes §§ 52-480 and 52-570. The second count will be considered under part II and alleges a spite fence. In their first count they allege that they owned and occupied certain property, with a dwelling thereon, located in the rear of the defendants' property and dwelling, the latter property fronting on William Street in the town of Norwalk, a public highway, and that ingress and egress to and from the plaintiffs' property were by and over a driveway extending from William Street to their property. This drive-

way was located, by mutual agreement, partly on the property of the defendants and partly on a fifteen-foot strip, owned by the plaintiffs, extending from the plaintiffs' property to William Street and paralleling the easterly side of the defendants' property. The plaintiffs claim that the defendants blocked their use of the driveway by excavating a trench across it. The plaintiffs sought injunctive relief and damages under this count. The defendants answered by way of a general denial and, judgment having been rendered for the plaintiffs after a court trial, the defendants have appealed, assigning error in the finding, in the court's conclusions, and in the court's summary.

We first consider the assignment of errors directed to the court's refusal to correct the finding as it relates to both counts. So far as it sets forth facts, the finding cannot be changed unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed. Practice Book § 985. The defendants have not established any failure by the trial court to include in its finding any fact which was material and was admitted or undisputed. *Drazen Lumber Co.* v. *Casner,* 156 Conn. 401, 403. Other facts sought to be deleted are fully supported by the evidence. The testimony was highly conflicting, and in such a situation the trier is the judge of the credibility of witnesses. *Banks* v. *Adelman,* 144 Conn. 176, 179. We find nothing in the appeal which requires us to disturb the finding as it relates to the first count and the second count.

## I

The court found the following facts pertinent to the first count. On or about September 19, 1963, the plaintiffs entered into a contract with Ulysses H. Cerulli for the purchase of a lot, and the dwelling

thereon, situated in the rear of the defendants' home, the latter fronting on William Street. Both lots were originally owned by the You-See Land Company, Inc., in which corporation Ulysses H. Cerulli and the defendant Frank Incerto were principals. Both Incerto and Cerulli had purchased their respective lots from the corporation. On a map of the company's land, the defendants' lot was designated as lot 4, and the lot purchased by the plaintiffs from Cerulli was designated as lot 3. It appears from the map that a fifteen-foot strip, designated as an accessway, connected lot 3 with William Street. This strip was a part of lot 3 as conveyed to the plaintiffs, and the strip paralleled and adjoined the easterly boundary of the defendants' property. The easterly side of the strip was the boundary line of adjoining property owners; that is, the strip, approximately 135 feet in length, was bounded on the west by the defendants and on the east by others. By contract with the plaintiffs, Cerulli was obligated, at his own cost, to construct a proposed crushed stone driveway over the strip, thus providing a driveway from William Street to the plaintiffs' property. Shortly before Cerulli sold lot 3 to the plaintiffs, he had constructed a dwelling house and garage on the property. During the construction of the house Cerulli had, in going to and from the construction work, traveled or passed over and along part of the strip and also over the property of the defendants which paralleled the strip. Such a route by Cerulli was with the acquiescence of the defendants. Shortly after October 10, 1963, the closing date for conveyance by Cerulli to the plaintiffs, the plaintiffs and the defendants, together with Cerulli, met on the property for the purpose of discussing the exact location of a driveway to the plaintiffs' property. As a result of the discussion, it was orally agreed by the parties that Cerulli would instal, at no expense to any party, a

crushed stone driveway twelve feet in width extending northerly from William Street to the plaintiffs' property, the driveway to be located partly on the property of the defendants and partly on the fifteen-foot strip of the plaintiffs. It, in effect, followed the route that Cerulli had used during the construction of the plaintiffs' house. Such a driveway would benefit both the defendants and the plaintiffs, for it was agreed that a single driveway would be more attractive than two driveways placed side by side, particularly since there was a third driveway a short distance easterly serving the adjoining owner. Furthermore, a single driveway partly on both properties alleviated a backup situation for the defendants in utilizing their garage. The common use of the driveway was to continue for an indefinite period.

Thereafter a crushed stone driveway was installed by Cerulli at his expense. From the time of the agreement of the parties until June 23, 1968, the driveway was used jointly by the parties. In the fall of 1964, by agreement of the parties, the crushed stone driveway was blacktopped, and the cost was shared equally by the parties. The cost of maintenance was equally shared, including repairing and snow removal. The blacktop was installed pursuant to instructions given the contractor by Frank Incerto. On or about June 23, 1968, the defendants, without the plaintiffs' consent, excavated a trench across the driveway on their rear property line, thereby preventing the use of the driveway by the plaintiffs. As a result, the plaintiffs were obligated to circumvent the driveway at the point of excavation and travel over a grassed area and between trees on their property to reach their garage. During this period the defendants called the Norwalk police department and complained about the plaintiffs' use of the driveway, and an investigation resulted.

The court concluded that the parties had reached a valid and binding agreement relative to the construction and maintenance of a driveway over an agreed easement extending in part across the defendants' property. The plaintiffs acted in reliance on the oral agreement for an easement and expended moneys for the improvement and maintenance of the driveway. The plaintiffs entertained a sincere belief that the parties had entered into a valid and binding agreement for an easement over the defendants' premises. The plaintiffs' partial performance took the agreement out of the Statute of Frauds, and estoppel came into operation. Use of the common driveway was of substantial value to the plaintiffs' premises and likewise would have value for future owners. It was the intention of the parties to create a permanent easement in favor of the plaintiffs across the defendants' premises. The plaintiffs' easement runs with the land, including all rights incident or necessary to its proper enjoyment, and constitutes a permanent right or claim of the plaintiffs and their heirs, successors and assigns. Use of the easement by the plaintiffs was not subject to interference by the defendants or revocation, termination or modification, directly or indirectly, by the unilateral acts of the defendants in 1968, or at any time thereafter. The plaintiffs, the court further concluded, are entitled to injunctive relief.

The defendants have challenged the court's conclusions. In addition, a summary was set forth by the trial court which we treat as a part of the court's conclusions and which the defendants have challenged. The summary sets forth the injunctive relief granted by the court, hereinafter reviewed. The conclusions reached by the court must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law. *Schurgast* v. *Schu-*

*mann,* 156 Conn. 471, 478. The defendants contend that the court erred in its application of the law in that it found an easement existed. In this respect they claim (1) there was no writing; (2) fifteen years had not elapsed; (3) the plaintiffs had not abandoned their own right of way; and (4) there was no agreement with respect to an easement.

The general rule is that an easement, being an interest in land, may be created only by grant, express or implied, or by prescription, and cannot be created by parol. "Despite the general rule, however, it has been recognized by the courts that an easement may exist by virtue of an estoppel, or an agreement." 25 Am. Jur. 2d 430, Easements and Licenses, § 17. The court concluded that in the instant case an easement arose by way of estoppel. "Estoppel rests upon the misleading conduct of one party to the prejudice of the other." *Franke* v. *Franke,* 140 Conn. 133, 139; *Tradesmens National Bank of New Haven* v. *Minor,* 122 Conn. 419, 424, and cases cited. An easement by estoppel arises when a grantor voluntarily imposes an apparent servitude on his property and another person, acting reasonably, believes that such servitude is permanent and in reliance upon that belief either does something he would not otherwise have done or refrains from doing something that he would otherwise have done. *United States* v. *Thompson,* 272 F. Sup. 774, 784. "In case there is an attempted oral grant of an easement, and the intended grantee makes improvements for the purpose of exercising the easement, equity will recognize and enforce the easement on the theory of what is ordinarily referred to as that of part performance but which is essentially the theory of estoppel." 3 Tiffany, Real Property (3d Ed.) § 801, p. 318. There is no doubt of the mutuality of the agreement, of the joint participation of the parties in its consummation, and of the use of the driveway

by both the plaintiffs and the defendants for a period of nearly five years, with the cost of repairs, maintenance and snow removal being shared equally by the parties. The court's conclusion that an easement had come into existence by estoppel as a result of the defendants' conduct and the plaintiffs' action is adequately supported by the finding.

The defendants further assert that the oral agreement was ineffective because it contravened the Statute of Frauds. The answer to this claim is that the agreement was taken out of the statute by part performance of the oral contract. " 'Though the grant of an easement is within the statute of frauds, and must be in writing, yet a parol grant executed will be upheld under the same circumstances and on the same principles that a parol contract for the sale of lands would be; as where the grantee made improvements in good faith under the grant, or expended money or capital in its enjoyment.' " *Johnson* v. *Lewis,* 47 Ark. 66, 71. The plaintiffs forwent the construction of a driveway by Cerulli, at his expense, over their fifteen-foot strip and in lieu thereof entered into a mutual agreement with the defendants to have Cerulli, at his expense, construct a driveway over part of the strip and over the easterly side of the defendants' property. In addition, the plaintiffs made expenditures jointly with the defendants in the repair and improvement of the new course. Such conduct related to a contract existing between the parties and therefore took the contract out of the operation of the Statute of Frauds. *Birdsey* v. *Kosienski,* 140 Conn. 403, 412; *Padula* v. *Padula,* 138 Conn. 102, 108; *Wolfe* v. *Wallingford Bank & Trust Co.,* 124 Conn. 507, 514; *Johnson* v. *Lewis,* supra.

The defendants further claim that there had been no abandonment by the plaintiffs of their access to William Street over the fifteen-foot strip. Relying

on *Birdsey* v. *Kosienski,* supra, they argue that one of the essential elements necessary to remove the application of the Statute of Frauds is an abandonment of certain rights—here, the alleged abandonment by the plaintiffs of access to their property over the fifteen-foot strip. While it is true the plaintiffs continued to possess the fifteen-foot strip, it is also true that it was never adapted to use as a driveway, except for the part used in establishing the driveway in question. The original agreement between the plaintiffs and Cerulli was that Cerulli would construct a driveway at his expense over the strip. When the plaintiffs and the defendants agreed on the location of the driveway in issue, Cerulli then agreed to construct the driveway over the course agreed upon. To that extent the original plan to construct a proposed driveway over the strip was abandoned. The plaintiffs had given up a right to which they were entitled and of which the defendants had knowledge.

We now come to the more difficult question relating to the intent of the parties as to the duration of the easement, as manifested at the time of the agreement. The court concluded that the intention of the parties was to create a permanent easement; that is, one which ran with the land. This determination appears to have been predicated in part on the court's finding that no definite time limit was fixed by either party in that "[s]aid common use was to continue for an indefinite period," and in part on all of the circumstances engendered by the surrounding facts. When the parties to an easement have failed sufficiently to express their meaning, their intent becomes a question of fact to be ascertained by a court; and in order to arrive at this intent, all of the surrounding circumstances may be inquired into and taken into consideration. *Birdsey* v. *Kosienski,* supra, 410; *Bauby* v. *Krasow,* 107 Conn. 109, 114; *Callan* v.

*Hause,* 91 Minn. 270; *Tusi* v. *Jacobsen,* 134 Ore. 505. As a rule, an easement is never construed to be in gross and purely personal, when it can fairly be construed to be appurtenant and if so construed it runs with the land. *Gulick* v. *Hamilton,* 287 Ill. 367; *Sabins* v. *McAllister,* 116 Vt. 302; 25 Am. Jur. 2d, Easements and Licenses, § 13. Where there is doubt as to whether an easement is appurtenant or in gross, the presumption is in favor of the appurtenant easement. *Chase* v. *Cram,* 39 R.I. 83.

In *Gager* v. *Carlson,* 146 Conn. 288, the court was called on to construe the duration of an easement (flowage) conveyed in general terms and unlimited as to time and purpose. While the situation in Gager is somewhat different from that in the instant case, the court said (p. 298) in construing the grant: "[I]n the construction of an instrument creating an easement, ambiguous language, in a case of reasonable doubt, will be construed in favor of the grantee rather than in favor of the grantor. *Sweeney* v. *Landers, Frary & Clark,* 80 Conn. 575, 579 . . . ."

The defendants assert in their claims of proof, and argue, that at the meeting with the plaintiffs they, the defendants, agreed only to a temporary use of the driveway by the plaintiffs, and that the plaintiffs stated they would make arrangements to instal their own driveway. Such assertions are in conflict with the plaintiffs' version of what occurred at the meeting, and, as previously pointed out, where there is conflict the court is the judge of the credibility of a witness. *Banks* v. *Adelman,* 144 Conn. 176, 179. In weighing the circumstances on the scale, we are unable to conclude that the trial court erred in construing the agreement of the parties, together with their subsequent conduct, as creating an easement appurtenant.

Having found the issues for the plaintiffs, the court granted relief by permanently enjoining the

defendants from obstructing or interfering directly or indirectly with the plaintiffs' use of the common driveway and further directed the defendants, within sixty days and at their sole expense, to restore the driveway to its original condition. "Injunction is the proper remedy to stop interference with an owner's use and enjoyment of an easement." *Gerald Park Improvement Assn.* v. *Bini,* 138 Conn. 232, 236. The plaintiffs' claim for monetary damages was denied.

## II

Under the second count the plaintiffs alleged that the defendants erected a wooden spite fence in excess of six feet in height across the driveway in the area of the trench. This fence was an extension of a fence previously erected along the defendants' rear property line and was erected shortly after the trench had been excavated and during a time when the relations of the parties had become embittered. The fence, it is further alleged, effectively blocked a view of the plaintiffs' home from William Street and the plaintiffs' view toward the street. Moreover, it endangered the safety of children in the area for the reason that operators of vehicles going to and from the plaintiffs' property were compelled to travel around the fence and on grass between trees. An additional allegation was that the fence injured the value of the plaintiffs' property and was erected maliciously with intent to injure and annoy the plaintiffs. Injunctive relief and damages were sought. The defendants answered by way of a general denial.

The defendants' assignments of error, here, resemble those made under the first count in that the finding and conclusions fall under attack. For the same reasons as under the first count, we find nothing in the record to justify a disturbance of the subordinate facts. The court found that for a substantial

period of time prior to July 15, 1968, the defendants had maintained a wooden fence in excess of six feet in height along a portion of their rear property line, within the line of vision between the two houses but not blocking the view of the plaintiffs' dwelling from William Street. This fence was originally built for the express purpose of affording privacy to the defendants' backyard. After bitter arguments by the parties concerning the use of the driveway and a complaint by the defendants to the Norwalk police department, the defendants extended the old fence by a new fence, in excess of six feet in height, along the remaining portion of their rear property line and across the driveway. This extension interfered with the view of the plaintiffs' home from William Street and their view toward William Street. In addition, the new fence created a dangerous hazard to those approaching the plaintiffs' home in motor vehicles by limiting their ability to see children in the area. (While it does not appear in the finding, the testimony of both parties revealed that the plaintiffs had minor children.)

The court concluded that the fence extension was illegal, wrongful and in violation of §§ 52-480 and 52-570 and met the following tests: It was erected on the defendants' land; it was maliciously erected; the defendants intended to injure the enjoyment of the plaintiffs' land; the fence extension was useless to the defendants; the plaintiffs' enjoyment of their land was, in fact, impaired. The court then granted injunctive relief directing the defendants at their sole expense to remove the portion of the fence erected by them in 1968. The claim for monetary damages was denied.

Section 52-480 provides for injunctive relief against the "malicious erection" of any structure intended to annoy and injure the owner of adjacent

land in respect to his use and disposition of the same. Section 52-570 provides a legal remedy in damages for the same kind of act, using only slightly different language. "These two statutes have been on our books for about one hundred years and have been unchanged since 1875, but have been cited in comparatively few cases." *Rapuano* v. *Ames,* 21 Conn. Sup. 110, 111. The leading case on this subject appears to be *Whitlock* v. *Uhle,* 75 Conn. 423, 426, wherein the court set forth the essential elements or conditions necessary to sustain an action under the statutes. It is apparent that the trial court found that the conditions described in *Whitlock* had come into existence.

The defendants contend that two of the conditions had not been proven; that is, first, that the structure or fence was useless to the defendants, and, second, that the enjoyment of the plaintiffs' land was, in fact, impaired. In brief and argument the defendants do not appear to attack the court's conclusions that the fence was maliciously erected and that the defendants intended to injure the plaintiffs' enjoyment of their property. In considering whether these two conditions had been shown to exist, we should perhaps point out that it appears, both from testimony and from the exhibits made a part of the finding, that the new fence extended along the defendants' rear property line for a short distance before crossing the driveway. We are here concerned only with the portion of the newly erected fence which does not cross the driveway. This is so because the portion crossing the driveway would have to be removed under the terms of the injunction granted in connection with the first count, wherein the court directed the defendants to restore the driveway to its original condition.

We first consider whether the fence extension was useless to the defendants. The court found that the

older or original portion of the fence extending along the defendants' rear property line had been erected to afford privacy to their backyard; it concluded, however, that the extension was useless to the defendants. We may consult the memorandum of decision for a better understanding of this conclusion. *Youngset, Inc.* v. *Five City Plaza, Inc.*, 156 Conn. 22, 26. There we find the statement: "[T]he fence extension was fundamentally useless to the Defendants. Any minimal alleged benefits to the Defendants were far outweighed by their 'controlling purpose' to irritate and harass the Plaintiff. Such incidental benefits as may have accrued to Defendants, from erection of the fence extension, do not alter the result. *Whitlock* v. *Uhle*, supra, 428; 2 C.J.S., Adjoining Landowners, § 51 p. 45." That is to say, the structure did not substantially serve and is not intended to serve any purpose but to injure . . . the plaintiffs in the enjoyment of their land. See *Whitlock* v. *Uhle*, supra, 426. The memorandum of decision further indicates that the court by agreement with the parties and accompanied by counsel made a personal inspection of the premises. "Evidence obtained by the court upon such inspection was properly taken into account in reaching the conclusion and making up the finding. . . . Manifestly we cannot review evidence thus obtained or know what part it played in the court's conclusion." *Albright* v. *MacDonald*, 121 Conn. 88, 91. Upon the subordinate facts, including the character, location and surroundings of the fence and the court's personal inspection of the premises, we cannot say there was error in concluding that there was no reasonable possibility of any real advantage to the defendants in the use of their property. Where malice has been shown, the real usefulness of the structure to the defendants must be greater than "subordinate and incidental." *Gallagher* v. *Dodge*, 48 Conn. 387, 392.

The second condition claimed not to have been proven was that the enjoyment of the plaintiffs' land was impaired. The court found that the fence interfered with the plaintiffs' view from their home to the street and with the view of their home from the street. It also found that the fence created a dangerous and hazardous condition in the entrance and exit of motor vehicles to the plaintiffs' premises by limiting one's ability to see children because of the narrow entryway. Both §§ 52-480 and 52-570 grant relief if it is found that the fence was maliciously erected and "intended to annoy and injure" the plaintiffs in the use of their premises. On the facts found, including the court's personal inspection of the premises, it cannot be said that error was committed by the court in concluding, as it did, that the use by the plaintiffs of their premises had been impaired.

There is no error.

In this opinion DiCENZO and KINMONTH, Js., concurred.