ROBERT L. WALTON ET AL. *v.* TOWN OF
NEW HARTFORD ET AL.
(14318)

CALLAHAN, GLASS, COVELLO, BORDEN and BERDON, Js.

156

Argued April 3—decision released July 28, 1992

*Robert K. Wynne,* for the appellants (third party defendants).

*Steven B. Kaplan,* for the appellees-cross appellants (plaintiffs).

*Robert E. Pace,* for the appellees (defendants-third party plaintiffs).

*John W. Pickard,* for the cross appellee (defendant town of New Hartford).

BORDEN, J. This appeal arises from an amended complaint filed by the plaintiffs, Robert L. Walton and Linda M. Walton, against the defendants, the town of New Hartford (New Hartford) and Alan and Karen Habig (Habigs), alleging damage to the plaintiffs' real property caused by water drainage, and from a third party complaint filed by the Habigs against the third party defendants, James A. and Joann K. Parsons (Parsons), seeking indemnification. The Parsons appeal from the judgment of the trial court rendered in favor of the Habigs on the Habigs' third party complaint. The plaintiffs cross appeal from the trial court's denial of the plaintiffs' motion to open and modify the judgment of the trial court rendered in favor, in part, of the plaintiffs.

The Parsons claim that the trial court improperly: (1) concluded that the plaintiffs had granted to them a license, rather than an easement, over the plaintiffs' property; and (2) granted the plaintiffs injunctive relief.[1] In their cross appeal, the plaintiffs claim that the trial court improperly denied the plaintiffs' motion to open and modify the judgment rendered, in part, in their favor. We affirm the trial court's judgment.

The relevant facts are as follows. The plaintiffs own property known as lot 16 on Lair Road in New Hartford. The plaintiffs' property is contiguous with and downhill from the Habigs' property, known as lot 17 on Lair Road in New Hartford. The Habigs purchased their property from the Parsons.[2] At the time the plaintiffs purchased their home, in March, 1986, substantial surface water drained onto the plaintiffs' property from Lair Road and from two drainage pipes owned

---

[1] The Parsons also claimed in their brief that the trial court improperly concluded that they must indemnify the plaintiffs rather than the Habigs. The Parsons abandoned this claim in oral argument.

[2] The Parsons purchased lot 17 in November, 1985, and sold the lot to the Habigs in December, 1988.

by New Hartford that were located on the plaintiffs' property.[3] At approximately the same time, James A. Parsons discovered a four inch diameter pipe that ran underneath his property. The pipe emptied water that had collected from curtain drains on the Parsons' property onto the plaintiffs' property. Parsons then informed the plaintiffs of the existence of the pipe.

After discussions with the Parsons and with New Hartford officials about ways to solve their water drainage problems, the plaintiffs decided to install an underground water drainage system on their property designed to divert water away from their septic system. The water drainage system was installed in August, 1986, and consisted of two long pipes connected to two catch basins that carried drainage water to the rear of the plaintiffs' property. The first catch-basin was located approximately forty feet west of Lair Road. A thirty inch diameter pipe connected to that catch basin and ran northwesterly underground approximately ninety feet, connecting to a second catch basin located at the bottom of the plaintiffs' driveway. A thirty-six inch diameter pipe connected to the second catch basin and ran in a northwest direction underground approximately 120 feet to the rear of the plaintiffs' property. This pipe had a flared end and emptied the drainage water that collected from the various pipes connected to the drainage system directly onto the plaintiffs' property.

On September 10, 1986, shortly after the water drainage system was installed, the plaintiffs granted to New Hartford a written easement permitting the town to discharge water onto the plaintiffs' property from its two drainage pipes. The easement required,

---

[3] One of these pipes collected runoff water from a hill across the street from the plaintiffs' property. The other pipe collected water from New Hartford's storm drainage system.

inter alia, that New Hartford construct on the plaintiffs' property the first catch basin into which the two pipes would connect, and maintain the catch basin and discharge system.[4] The plaintiffs also agreed to allow the Parsons to connect, into the water drainage system, the pipe that ran underneath the Parsons' property. This pipe connected into the plaintiffs' second catch basin.[5] Their agreement, however, was never reduced to writing.

[4] The easement provided: "WHEREAS, the Town of New Hartford has constructed two drain pipes that encroach approximately forty feet onto the property at the southeast corner, which discharges large amounts of water onto said property;

"NOW, THEREFORE, in consideration of $1.00 and other valuable considerations received from the Town of New Hartford, the owners do hereby grant to the Town of New Hartford a permanent easement to discharge water onto the aforesaid property from these two drainage pipes, provided that the town of New Hartford complies with the following conditions:

"1. The Town shall construct, or cause to be constructed, an enclosed catchbasin that ties directly into the two drainage pipes described above.

"2. This catchbasin also shall be connected to a discharge drainage system constructed by the owners, which system shall discharge said water by underground pipe running approximately 200 feet in a northwest direction across the property and into a catchbasin located at the tree line adjacent to the northern boundary of the property and approximately 240 feet from Lair Road;

"3. The Town shall be responsible for maintaining the enclosed catchbasin and the discharge system relating to the drainage of water from the two drainage pipes noted above.

"4. Any replacement or modification of the two drain pipes by the Town shall be done only with prior, written consent of the owners. In no event shall the discharge of water from the two drain pipes increase beyond the reasonable capacity of the drainage system as constructed concurrent with the execution of this Agreement.

"In the event of the Town's failure to comply with any of the aforesaid terms, the owners shall have the option of either terminating this easement and blocking off the drainage pipes, or seeking equitable or legal relief from a court of law to enforce these terms.

"Any such termination by the owner must be preceded by written notice to the Town by certified or registered mail, giving the Town 30 days to cure any deficiency. No such termination shall be valid without said notice."

[5] As a condition to allowing the Parsons to connect into the plaintiffs' water drainage system, the plaintiffs required the Parsons to incur all expenses associated with the connection of the pipe to the catch basin. After the Parsons' pipe was connected into the drainage system, the plaintiffs

On December 2, 1988, the plaintiffs notified the Parsons that since "[n]o written easement was granted [to the Parsons, they were to] . . . stop . . . directing the flow of water by pipe into [the plaintiffs'] . . . catchbasin." The Parsons never responded to the letter. On December 19, 1988, the Parsons sold lot 17 to the Habigs without disclosing their dispute with the plaintiffs concerning the pipe.[6] On September 22, 1989, the plaintiffs notified New Hartford that substantial erosion had occurred on the plaintiffs' property due to the town's failure to maintain the discharge system as required by the easement. The plaintiffs requested that New Hartford "cure the deficiency that exists in the drainage system" or they would terminate the easement. New Hartford did not respond.

Thereafter, the plaintiffs commenced this action against the defendants. In an amended thirteen count complaint, the plaintiffs alleged that New Hartford "breached its covenant to maintain the drainage system in accordance with the terms of the easement" and sought damages and injunctive relief.[7] The plaintiffs further alleged that the Habigs were trespassing and committing a nuisance since the plaintiffs had requested

were sent a bill for approximately $1800 for the installation. The Parsons refused to pay this amount and instead paid only $200 for the pipe connection. The Parsons' builder, Jay Louden, also paid $125 for the pipe connection. The Parsons further paid $75 to remove trees in anticipation of the connection.

[6] The Parsons executed to the Habigs a No Survey Affidavit, which represented to the Habigs that "[t]he undersigned have owned the property for the last three years immediately preceding the date hereof [December 19, 1988], and during said period of ownership *the undersigned have had no knowledge or notice of any claim of ownership or other interest . . . by any other person for or in all or any part of the Property, including but not limited to any boundary line disputes or disagreements which may affect the size or location of improvements on the property or the size or location of improvements . . . on neighboring property, and the undersigned have no knowledge of any encroachments or improvements which affect the property or the improvements thereon.*" (Emphasis added.)

[7] The plaintiffs also alleged claims of trespass and nuisance against New Hartford. These claims are not involved in this appeal.

the Habigs' predecessors in title, the Parsons, to disconnect the pipe that discharged water onto their property.[8] The plaintiffs also sought damages and injunctive relief from the Habigs. The Habigs filed a third party complaint against the Parsons alleging intentional and negligent misrepresentation by the Parsons for their failure to disclose to the Habigs the dispute over the pipe. They sought indemnification from the Parsons for any judgment rendered against the Habigs in favor of the plaintiffs.

The trial court rendered judgment in favor, in part, of the plaintiffs on the plaintiffs' amended complaint against the Habigs and against New Hartford. The court further rendered judgment in favor of the Habigs on their third party complaint against the Parsons.

Regarding the plaintiffs' allegations against New Hartford, the court concluded that "the plaintiffs have sustained their burden of proof that the Town of New Hartford has failed to properly maintain 'the enclosed catchbasin and the discharge system. . . .' " The court then concluded that "the plaintiffs are entitled to an order directing the town to periodically, as necessary, clear the catchbasin on the plaintiffs' property as well as that located on Lair Road which feeds into the easement pipes."

Regarding the plaintiffs' allegations against the Habigs, the court concluded that the plaintiffs granted to the Parsons a license to connect the pipe to the plaintiffs' water drainage system, which was revocable at the plaintiffs' will. The court then concluded that since the license had been revoked by a letter dated Decem-

---

[8] The plaintiffs also alleged that the Habigs were trespassing and committing a nuisance by the construction of a black pipe on the Habigs' property that discharged water onto the plaintiffs' property and from the construction of the driveway which, due to its slope, discharged water onto the plaintiffs' property. The trial court rendered judgment in favor of the Habigs on these issues. These issues are not involved in this appeal.

ber 2, 1988, "Mr. and Mrs. Habig acquired no right to continue the tie-in to the [plaintiffs'] drainage system and they must therefore be enjoined from further use . . . and shall cease and desist the use of the pipe leading from their property . . . to the property of [the plaintiffs] . . . ." Regarding the Habigs' allegations against the Parsons, the court concluded that by failing to disclose to the Habigs the dispute over the drainage pipe, the Parsons had "misrepresented existing fact and thereby induced the Habigs to purchase [their] home. . . . Accordingly, [the Parsons] are liable to [the Habigs] on the . . . third party complaint . . . [and are required to indemnify] the Habigs for any judgment that may be rendered against them in favor of the plaintiffs."

The Parsons appealed to the Appellate Court from the judgment rendered in favor of the Habigs on the third party complaint. The plaintiffs filed a cross appeal from the judgment rendered in their favor, in part; see footnote 8, supra; on their complaint. We transferred the appeal and cross appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We now affirm the trial court's judgment.

## I

In their appeal, the Parsons claim that the trial court improperly concluded that the plaintiffs had granted to the Parsons a license, rather than an easement, to use the plaintiffs' property.[9] We disagree.

---

[9] Before we consider the Parsons' claims, we must first determine if the judgment appealed from was final so that we have subject matter jurisdiction over the appeal. In the third party action, the trial court determined that the Parsons must indemnify the Habigs but did not determine the amount of damages "since the cost of any remedial work has not been done, nor has its necessary extent been determined."

In *Ricci* v. *Naples*, 108 Conn. 19, 20, 142 A.2d 452 (1928), the plaintiff brought suit against the defendant seeking an injunction ordering the defendant to "remove certain connections with an underground sewer pipe located upon the land of the plaintiff . . . ." The judgment was rendered upon the equitable issues for the plaintiff but "the damages had [not] been

The trial court made the following findings regarding this claim. "After the granting of the easement to the Town [of New Hartford] in September, 1986, the [plaintiffs] and the Parsons entered into discussion concerning a request by the Parsons to tie into the drainage line on the [plaintiffs'] property. While orally agreed to, the permission was never reduced to writing in the form of a valid easement. The right which the Parsons claim to have obtained was an interest in the [plaintiffs'] real estate and therefore within the [S]tatute of [F]rauds. . . . *Foot* v. *New Haven and Northampton Company and Others,* 23 Conn. 214, 223 [1854]. What they did receive was a license to lay a pipe and connect to the discharge system on the [plaintiffs'] property. Such a right may be obtained orally. *Occum Co.* v. *A & W Sprague Mfg. Co.,* 34 Conn. 529 [1868]; Tiffany Real Property, Third Ed., Vol. III, § 830.

"Since the Parsons obtained only a license, it was revocable at the will of the [plaintiffs]. . . . 'Generally, a license to enter premises is revocable at any time by the licensor. . . .' *State* v. *Grant,* 6 Conn. App. 24, 29 [502 A.2d 945 (1986)]. . . . In view of the fact that the license to the Parsons was revocable, it was not assignable to the Habigs. *Prince* v. *Case,* 10 Conn. 375 [1835]. Aside from this legal proposition, the license was revoked by letter dated December 2, 1988 from [the plaintiffs'] to [the Parsons]. . . . Accordingly, it is ordered that on or before June 1, 1991 the defendants Alan and Karen Habig shall cease and desist the use of the pipe leading from their property . . . to the property of [the plaintiffs]."

assessed by a jury." Id., 21–22. We held that the "judgment, by its terms, disposes finally of all the issues in the case except the amount of damages and was a final judgment, as to the issues adjudicated, from which an appeal lay immediately to this court." Id., 22. Similarly, in the present case, we conclude that the judgment appealed from was final. See also *Glasson* v. *Portland,* 6 Conn. App. 229, 231 n.3, 504 A.2d 550 (1986).

The Parsons argue that the trial court did not apply the correct standard of law in this case because it concluded, as a matter of law, that an easement could not be created, under any circumstances, without a writing. Nowhere in the court's decision, however, does the court conclude, as a matter of law, that an easement can never be created without a writing. Furthermore, there is nothing in the record to indicate that the court did not consider the appropriate principles of law governing easements in Connecticut. Indeed, the Parsons' attorney directed the court's attention to two Connecticut cases that have permitted the creation of an easement without a writing.[10] Moreover, the trial court could reasonably have concluded that the parties did not intend to reduce their oral license agreement to a written easement. In the present case, as a precondition to the plaintiffs granting the Parsons an easement, the Parsons were to incur all costs to connect their pipe into the plaintiffs' drainage system. When the plaintiffs discussed the bills for such services with the Parsons, the Parsons refused to pay. The trial court could reasonably have concluded, therefore, that at this point discussions of granting the Parsons an easement were terminated.

Even if the basis for the trial court's decision could be read as ambiguous, we read "an ambiguous trial court record so as to support, rather than contradict, its judgment. *Bell Food Services, Inc.* v. *Sherbacow,* 217 Conn. 476, 482, 586 A.2d 1157 (1991)." *Lauer* v. *Zoning Commission,* 220 Conn. 455, 470, 600 A.2d 310 (1991). We have repeatedly stated that it is the appel-

[10] The two cases were *Birdsey* v. *Kosienski,* 140 Conn. 403, 101 A.2d 274 (1953), and *Foldeak* v. *Incerto,* 6 Conn. Cir. Ct. 416, 274 A.2d 724 (1970). In *Birdsey* v. *Kosienski,* supra, 412, we held that an oral easement may be created, and thus taken out of the Statute of Frauds, by part performance by one of the parties. In *Foldeak* v. *Incerto,* supra, the Appellate Division of the Circuit Court held that an easement may be created by estoppel, even without a writing.

lant's responsibility to provide an adequate record for review. See Practice Book § 4061; *Bank of Boston Connecticut* v. *Schlesinger,* 220 Conn. 152, 595 A.2d 872 (1991); *Barnes* v. *Barnes,* 190 Conn. 491, 494, 460 A.2d 1302 (1983). "[W]here the factual or legal basis of the trial court's decision is unclear, the appellant should file a motion for articulation pursuant to Practice Book § 4051. *Thiel Realty Corporation* v. *Culligan Water Conditioning Co.,* 9 Conn. App. 191, 193, 517 A.2d 1052 (1986)." *Elliss* v. *Ronning,* 11 Conn. App. 662, 664, 528 A.2d 1174 (1987). In the absence of such action by the Parsons, we must presume that the trial court considered all the facts before it and applied the appropriate legal standards to those facts.

## II

The Parsons next claim that the trial court improperly granted the plaintiffs injunctive relief. The Parsons argue that the plaintiffs failed to prove by a preponderance of the evidence that they would suffer irreparable harm without such relief and that they had no adequate remedy at law. This argument is without merit.

"A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. *Hartford* v. *American Arbitration Assn.,* 174 Conn. 472, 476, 391 A.2d 137 (1978)." (Internal quotation marks omitted.) *Pet* v. *Department of Health Services,* 207 Conn. 346, 370, 542 A.2d 672 (1988). "A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion. *Waterbury* v. *Commission on Human Rights & Opportunities,* 160 Conn. 226, 230, 278 A.2d 771 (1971)."

(Internal quotation marks omitted.) *Haggerty* v. *Parniewski,* 11 Conn. App. 37, 39, 525 A.2d 984 (1987).

In the present case, the plaintiffs granted to the Parsons a license to connect a pipe into a catch basin on their property and to discharge water onto their property. The plaintiffs thereafter revoked this license. By rendering judgment in favor of the plaintiffs against the Habigs, in part, the trial court concluded that the Habigs were trespassing and committing a nuisance by leaving the pipe connected to the plaintiffs' catch basin after the plaintiffs had revoked the license. We have held that in determining whether to grant injunctive relief, "a more liberal rule [is] followed in cases of a permanent or continuing nuisance," such as a trespass. *Hartford Rayon Corporation* v. *Cromwell Water Co.,* 126 Conn. 194, 199, 10 A.2d 587 (1940); see also *Sisters of Saint Joseph Corporation* v. *Atlas Sand, Gravel & Stone Co.,* 120 Conn. 168, 180 A. 303 (1935). Under these facts we conclude that the trial court did not abuse its discretion in granting the plaintiffs injunctive relief.

The Parsons contend, however, that the court improperly granted the injunctive relief since the equities in the present case do not balance in favor of granting the plaintiffs injunctive relief. More specifically, the Parsons argue that the insignificant damage caused to the plaintiffs' property by their pipe is greatly outweighed by the cost to the Parsons of removing the pipe and the damage that will be caused to the Habigs' property.

We first note that "[t]he remedies open to the owner of land when a license for encroachment or the like has been revoked are largely dependent upon the circumstances, the equities between the parties, and the end sought to be attained. 17 R.C.L. p. 590. Injunction is available in a suitable case, and will ordinarily issue at

the suit of a landowner to compel the removal of encroachments. 1 Amer. Jur. p. 515. See *Norwalk Heating & Lighting Co.* v. *Vernam,* 75 Conn. 662, 55 Atl. 168 [1903]; *Geragosian* v. *Union Realty Co.,* 289 Mass. 104, 193 N.E. 726, 96 A.L.R. 1282, and note, p. 1287; 31 A.L.R. 1302; 17 A.L.R. 833. The right to this remedy extends, in appropriate cases, to structures erected or privileges exercised under a license, upon revocation thereof. See cases annotated, 38 A.L.R. p. 1138." *Bland* v. *Bregman,* 123 Conn. 61, 66–67, 192 A. 703 (1937). Thus, an injunction is ordinarily a suitable remedy when a license for encroachment on land is revoked, such as in the present case.

"This court has noted [moreover] that . . . '[i]n exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction.' *Moore* v. *Serafin,* 163 Conn. 1, 6, 301 A.2d 238 (1972), and cases cited therein. 'The relief granted must be compatible with the equities of the case. *Moore* v. *Serafin,* [supra, 5]; *Gerald Park Improvement Assn., Inc.* v. *Bini,* 138 Conn. 232, 236, 83 A.2d 195 [1951].' *Dupuis* v. *Submarine Base Credit Union, Inc.,* 170 Conn. 344, 356, 365 A.2d 1093 (1976). We must assume, because of the absence of anything in the record to indicate the contrary, that before entering its order the court properly weighed the equities between the parties to the action. See *Gerald Park Improvement Assn., Inc.* v. *Bini,* supra, 237." *Berin* v. *Olson,* 183 Conn. 337, 343, 439 A.2d 357 (1981). Our conclusion is consistent with the principle that we read an ambiguous trial court record so as to support, rather than contradict, its judgment. *Lauer* v. *Zoning Commission,* supra, 469–70.

### III

In their cross appeal, the plaintiffs claim that the trial court improperly denied their motion to open and

modify the judgment of the trial court rendered in favor, in part, of the plaintiffs. Specifically, the plaintiffs contend that the trial court did not give them the full relief that it should have because the "relief ordered against the Town of New Hartford in the judgment issued by the trial court was inconsistent with both its own factual findings and its legal conclusions as to the Town." We disagree.

The following facts are relevant to this claim. The plaintiffs' amended complaint alleged that "[t]he Defendant Town of New Hartford has breached its covenant to maintain the drainage system in accordance with the terms of the easement in that it has allowed silt, sand and salt to collect in said system, hampering its function, and causing water, salt, silt and sand to discharge out of the drainage system and onto the Plaintiffs' property, causing erosion, exposing root systems and causing ecological damage, creating wetlands, causing damage to the Plaintiffs' landscaping and seriously impairing the plaintiffs' ability to use and enjoy their property."

The trial court concluded that "the plaintiffs have sustained their burden of proof that the Town of New Hartford has failed to properly maintain 'the enclosed catchbasin and the discharge system. . . .' " The court then ordered that, pursuant to the easement, "the plaintiffs are entitled to an order directing the town to periodically, as necessary, clear the catchbasin on the plaintiffs' property as well as that located on Lair Road which feeds into the easement pipes."

After the Parsons appealed from the judgment on the third party complaint, the plaintiffs cross appealed from the judgment rendered in favor, in part, of the plaintiffs.[11] Subsequently, the plaintiffs filed a motion

---

[11] The plaintiffs initially cross appealed only from that part of the judgment rendered in favor of the Habigs on the plaintiffs' complaint. See footnote 8, supra.

to open and modify the judgment in favor, in part, of the plaintiffs, pursuant to Practice Book § 326 and General Statutes § 52-212a.[12] In their motion, the plaintiffs sought additional relief requesting the court, inter alia, to order New Hartford to maintain the entire drainage system, to clean the outflow area around the end of the final drainage pipe and to restore that area to its proper functioning condition. The trial court denied the plaintiffs' motion without articulation. Thereafter, the plaintiffs amended their cross appeal to include the trial court's denial of their motion.

We first note that the plaintiffs are not appealing from the judgment of the trial court rendered, in part, in their favor. Instead, they appeal from the trial court's failure to grant their motion to open and modify that judgment. Therefore, the standard of review on this claim is one of abuse of discretion rather than the usual plenary appellate standard of review.

"A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. See *Manchester State Bank* v. *Reale,* 172 Conn. 520, 523–24, 375 A.2d 1009 (1979); *State* v. *Fahey,* 147 Conn. 13, 15, 156 A.2d 463 (1959). In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. *State* v. *Bitting,* 162 Conn. 1, 11, 291 A.2d 240 (1971); *E.M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 612, 153 A.2d 463 (1959). *Celanese Fiber, Division of Celanese of Canada, Ltd.* v. *Pic Yarns, Inc.,* [184 Conn. 461, 466–67, 440 A.2d 159 (1981)]. *Acheson* v. *White,* 195 Conn. 211, 214–15, 487

---

[12] The plaintiffs' motion was directed both to that part of the judgment rendered in favor of the plaintiffs and to that part of the judgment rendered in favor of the Habigs on the plaintiffs' complaint.

A.2d 197 (1985). *Yanow* v. *Teal Industries, Inc.,* 196 Conn. 579, 583, 494 A.2d 573 (1985). The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did. *DiPalma* v. *Wiesen,* 163 Conn. 293, 298, 303 A.2d 709 (1972); *E. M. Loew's Enterprises, Inc.* v. *Surabian,* [supra, 611]. *Ridolfi* v. *Ridolfi,* 178 Conn. 377, 379, 423 A.2d 85 (1979)." (Internal quotation marks omitted.) *Gillis* v. *Gillis,* 214 Conn. 336, 340–41, 572 A.2d 323 (1990). Applying these principles, we conclude that the trial court did not act unreasonably or in abuse of its discretion and that its conclusions are amply supported by the evidence in the record.

In its decision, the trial court concluded that the plaintiffs had sustained their burden of proof that New Hartford failed to maintain the "enclosed catch basin and the discharge system." The court found that "dark polluted water . . . [was discharged] from the town pipes . . . [and not] from the Habig property . . . ." The court then ordered New Hartford to "clear the catch basin on the plaintiffs' property as well as that located on Lair Road which feeds into the easement pipes."

The plaintiffs claim that the court, on the basis of its findings, should have ordered New Hartford to maintain the entire drainage system, to clean the outflow area around the end of the final drainage pipe, and to restore that area to its proper functioning condition. We conclude that the trial court did not abuse its discretion in denying the plaintiffs such additional relief.

The trial court could reasonably have concluded that the relief it had granted to the plaintiffs would solve the plaintiffs' drainage problems and reduce the amount of dark polluted water on their property. The trial court ordered New Hartford periodically to maintain the first catch basin on the plaintiffs' property and

the catch basin across the street from the plaintiffs' property. Because all of New Hartford's drainage water emptied into the plaintiffs' first catch basin, the court could reasonably have concluded that its order of relief requiring New Hartford to clear that catch basin would abate the plaintiffs' silt and sand problems at the outflow area. Furthermore, there was no requirement in the written easement that the plaintiffs had granted to New Hartford that New Hartford restore the plaintiffs' property to its original condition. It was within the trial court's discretion to fashion injunctive relief as it saw fit and we will not second guess that determination on appeal absent an abuse of discretion.

The judgment is affirmed.

In this opinion the other justices concurred.