[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR PRELIMINARY INJUNCTION
The plaintiff Betzaida Morales by Mercedes Garcia[1], her mother and next best friend, has brought the instant action against the Connecticut State Department of Mental Retardation (hereinafter, DMR) and certain officials, to enjoin them from transferring Ms. Morales from her present residential setting until she has been afforded certain procedural hearing rights.
Ms. Morales is a fourteen year old girl with mental retardation. For the past six years, she has been living and has been educated at the Benhaven residential facility in West Haven, Connecticut; she is too handicapped to attend the Benhaven school. Ms. Linda Grimm, the director of Benhaven, described Ms. Morales as an aggressive, 165 pound young woman who is in constant movement, is hard to manage, has no sense of danger, is capable of "bolting" or taking off", and most importantly, suffers from the disease called Pica (which means she will ingest anything).[2] As a result of this condition, Benhaven has structured Ms. Morales' living arrangements so that she resides only with three other people and has a minimum of one and sometimes two adults attending her.
The cost for her residential placement at Benhaven was originally paid by the Hartford Board of Education but in July 1994, that organization terminated funding. Indeed on June 28, 1994, Terry Roberts, Regional Director, Region 2, DMR advised Ms. Morales' attorney that DMR would pay for her placement but that DMR would seek alternate arrangements "by the end of 1994." On March 20, 1995, Thomas Condon, Assistant CT Page 10178 Regional Director, DMR, advised Ms. Garcia that Ms. Morales was to be transferred to Richard House, a DMR facility in Newington. The letter indicated that she had a right to hearing. On March 24, 1995, she received another letter from Linda Goldfarb, Acting Commissioner, indicating that statutory hearing rights were not applicable to this situation. Further, Ms. Goldfarb advised Ms. Garcia, that placement for her daughter would be held only through June 30, 1995 and that funding at Benhaven would terminate on said date.
There are approximately nine adult residents now living at Richard House,[3] with a staff of two to four adults. The house is not, at least at the time of Ms. Morales' visit, "safe" for her occupancy. Indeed, during her visit, she ingested soap.
The plaintiff instituted this action on June 29, 1995 and the court, O'Neill, J., granted a temporary injunction, without prejudice, until the hearing before this court on July 3, 1995.
 II Discussion
 A.
A temporary injunction preserves the status quo until the rights of the parties can be determined after a full hearing.Jefferson Hospital v. Commission of Hospitals Health Care,196 Conn. 451, 457 (1985). A trial court is required, however, to balance the equities, id., 460, which includes a determination of the likelihood that the appellant will ultimately prevail. Id., 456. Additionally, "[a] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." Walton v. New Hartford, 223 Conn. 155, 165 (1992).
 B. 1.
From the testimony at the hearing, it is clear that the existing conditions at Richard House are not as favorable for Ms. Morales as the conditions at Benhaven. While not CT Page 10179 expressly stated Ms. Grimm's testimony indicated that with the present conditions at Richard House, Ms. Morales, as well as the present occupants, will be subject to harm. This court agrees.
2.
Ms. Morales maintains that she may not be transferred until she has been afforded an administrative hearing. DMR argues that since she is not "admitted" to a DMR facility she is not entitled to a hearing. The right to a hearing, of course, is governed by statute and counsel base their arguments on two subsections of General Statutes § 17a-210. General Statutes § 17a-210 (b), states, in part:
 (b) The commissioner shall be responsible for the development of criteria as to the eligibility of any person with mental retardation for residential care in any public or state-supported private institution and, after considering the recommendation of a properly designated diagnostic agency, may assign such person to a public or state-supported private institution. He may transfer such persons from one such institution to another when necessary and desirable for their
 welfare, provided such person and such person's parent, conservator, guardian or other legal representative receives written notice at least ten days prior to the proposed transfer of such person from any such institution or facility. Such prior notice shall not be required when transfers are made between residential units within the training school or a state mental retardation region or when necessary to avoid a serious and immediate threat to the or physical or mental health of such persons or others residing in such institution or facility. The notice required by this subsection shall notify the recipient of his or her right to request a hearing in accordance with subsection (c) . . .
General Statutes § 17a-210 (c) states:
(c) The parent, guardian, conservator or other CT Page 10180 legal representative of any person with mental retardation who resides at any institution or facility operated by the department of mental retardation, or any person with mental retardation himself who is eighteen years of age or older and who resides at any such institution or facility, may make a request, in writing, to the commissioner of mental retardation for a hearing on any transfer of such person from one institution or facility to another for any reason other than medical. Such hearing shall be conducted in accordance with the provisions of sections 4-176e to 4-184, inclusive.
The defendants argue that the provisions of § 17a-210 (c) which require the effected person to reside at a facility operated by DMR preclude the hearing provisions from applying to this case. This court, however, finds that subsection (b) must be addressed first and, accordingly, the question is whether Ms. Morales is entitled to a hearing under subsection (b).
As noted, the first sentence of subsection (b), authorizes the commissioner to "assign such [eligible] person[s] to a public or state supported private institution". Neither party has offered a definition of these two types of facilities. General Statutes § 17a-227 ("Licensing and regulation of residential facilities for mentally retarded and autistic persons") requires, at subsection (b), the commissioner to adopt regulations. Attached to Ms. Morales' brief were certain miscellaneous administrative regulations including definitions from § 17a-212-1 and § 19a-483b-1.
Regulation § 17a-212-1 which includes definitions for "Criteria for Determining Eligibility for Services/Criteria used in Selecting which Eligible Persons will Receive Services and in Selecting Private Sector Service Providers" defines at subsection (k) a "private sector service provider" as "any . . . organization or corporation who receives funding from the department for the purpose of providing residential and adult day services to persons with mental retardation . . . ." Section19a-483b-1 which includes definitions for "Funding programs For Privately Operated Community Residences for Mentally Retarded Persons"[4] defines at subsection (a), "admission" as "a private residential facility's acceptance of an individual into residence." A private residential facility is defined at CT Page 10181 subsection (o) as "any residence licensed by the department or proposed to be licensed by the department pursuant to Section 19a-467 CGS excluding community training homes, residential schools and habilitative nursing facilities." The limited testimony of Ms. Grimm suggests that as Benhaven has a school separate from the residence facility, that notwithstanding the educational training provided to Ms. Morales at the residence, the residential exclusion does not apply.
Based on these definitions, the testimony of Ms. Grimm, and the June 28, 1994 letter from Terry Roberts, this court finds that Benhaven would qualify as both a private residential facility and a private sector service provider. It would also therefore be a state supported private institution.
DMR, argues that Ms. Morales has never been assigned to Benhaven. The June 28, 1994 letter belies this argument.[5]
There is no stated definition of "assign" for § 17a-210 (b) but it is clear from that letter that the DMR's action fits within the plain meaning of assign. Ms. Morales is surely "admitted" at Benhaven.
The second sentence of § 17a-210 (b) provides, in part, that the Commissioner may transfer such persons from one institution to another provided such person . . . receives written notice. There is, of course, no dispute as to whether notice was given. The phrase "one such institution to another" applies to both public and state supported private institutions. Subsection (c) relied upon by DMR only covers situations which concern transfers from an "institution or facility operated by the [DMR]". Subsection (b) applies to this case.
The fourth sentence is the next relevant sentence and it states, in part, "[t]he notice required by this subsection shall notify the recipient of his or her right to request a hearing in accordance with subsection (c) . . . . The final sentence states that "[i]n the event that a hearing is requested prior to the proposed transfer, the transfer shall be stayed pending final disposition of the hearing." The reference to subsection (c) applies only to the procedural aspects for a hearing including both the manner by which a request is made and the actual hearing process according to General Statutes § 4-176e to 4-184. CT Page 10182
3.
To the extent this court has found that (1) Ms. Morales is covered by the provisions of 17a-210 (b); (2) that the DMR refuses to provide her with a proper hearing; (3) that the DMR intends on transferring her or terminating her funding[6]; and (4) that such transfer or termination will cause her harm, this court finds that she has met the necessary tests to obtain her preliminary injunction.
Accordingly it is the order of this court that the DMR and its officials are hereby restrained from transferring or terminating funding for Betzaida Morales at the Benhaven residence until a hearing is held in accordance with the General Statutes §§ 17a-210 and 17a-238 and Regulations of Connecticut State Agencies §§ 19a-483b-14 as well as other applicable statutory and regulatory provisions.
Berger, J.