TIMOTHY MELLON *v.* CENTURY CABLE
MANAGEMENT CORPORATION
(SC 15975)

Callahan, C. J., and Borden, Berdon, Norcott and McDonald, Js.

Argued November 5, 1998—officially released March 2, 1999

*Charles D. Ray*, with whom, on the brief, were *William H. Narwold* and *Robert P. Dolian*, for the appellant (plaintiff).

*Karl Fleischmann*, with whom was *Robert G. Scott, Jr.*, pro hac vice, for the appellee (defendant).

*Opinion*

BERDON, J. The principal issue in this appeal is whether, under the facts of this case, a utility company may license the right to use its pole lines to a third party, notwithstanding the objection of the owner of the land on which they are situated. We answer this question in the negative.

The facts of this case are not in dispute. The plaintiff, Timothy Mellon, owns two houses situated on approximately 291 acres of land located at the confluence of the Eight Mile River and the Connecticut River, approximately five miles north of Long Island Sound. Southern

New England Telephone Company (SNET) maintained utility poles and a pole line (pole line) on this property at the time that Mellon acquired it. These poles—which were installed at various times between 1931 and 1989—carry cable that supplies Mellon's telephone service; they also carry cable that supplies Mellon's power, which is provided by the Connecticut Light and Power Company (CL&P). Approximately twenty years ago, Mellon granted a scenic easement to the state of Connecticut over 281 acres of his land. At the time of trial, the state was negotiating with Mellon for a scenic easement over the remaining ten acres. In 1993, Mellon requested that the defendant, Century Cable Management Corporation (Century), supply cable television service to his two houses. In order to provide this service, Century installed cable on Mellon's land. Although 4500 feet of this cable was installed overhead on the pole line, Mellon arranged for 1700 feet of cable to be installed in an underground trench, for reasons both aesthetic and functional.

Without authorization from Mellon, Century installed an additional 300 feet of cable on the pole line (disputed cable) in order to provide service to other customers. This latter length of cable—which provides no service to Mellon—is clearly visible from at least 100 feet away. Century claims that the disputed cable is authorized by a license it purchased from SNET. When Mellon discovered the disputed cable, he demanded that Century either remove it or negotiate with him to purchase an easement. Century refused these requests, and Mellon commenced the present litigation, seeking both monetary and injunctive relief. Specifically, Mellon sought an order compelling Century to remove the disputed cable and restraining Century from committing any further trespasses on his property.

The case was tried before an attorney trial referee (referee). The parties entered into a stipulation providing, inter alia, as follows: (1) "[n]either Mellon nor his

predecessors in title has [granted] . . . any written easement, license or agreement in favor of SNET or CL&P"; (2) "[n]either Mellon nor his predecessors in title has [granted] . . . any written easement, license or agreement in favor of Century calling for the use of the pole line to provide service to third parties"; (3) "[when] Mellon acquired [his land], the pole line existed and has been openly, visibly, continuously and uninterruptedly used by SNET under a claim of right ever since";[1] and (4) "[t]he deed from [Mellon's predecessor] contains the following [sentence]: '[t]he premises are subject to certain pole line rights of [SNET].' "

The referee recommended that judgment enter in favor of Century on the ground that SNET possessed a right "akin to a prescriptive easement." The trial court summarily accepted the referee's recommendation. Mellon appealed from this judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). Shortly after filing his appeal, Mellon requested that the trial court articulate the basis on which it overruled his objections to the recommendation. In its articulation, the trial court recited the reasoning of the referee.

The central question in this case is whether SNET had the authority to grant a license to Century. In the absence of such authority, Century concedes that the license is a nullity. Century claims, however, that SNET does possess the requisite authority under either Connecticut law or federal law. We are not persuaded on either count. Accordingly, we reverse.

I

We begin our analysis with SNET's authority to grant the license to Century under the law of Connecticut. As

---

[1] The stipulation also provides that "[when] Mellon acquired [his land], the pole line existed and has been openly, visibly, continuously and uninterruptedly used by CL&P under a claim of right ever since . . . ."

a threshold matter, Century has stipulated that neither Mellon nor any of his predecessors in interest granted a written easement to SNET. In addition, Century concedes that SNET does not possess an easement by prescription.[2] Rather, Century claims that SNET has what Century now styles an "easement by estoppel."[3] In support of this claim, Century has called to our attention the only reported case in which any court in the state of Connecticut has ever considered an easement by estoppel, *Foldeak* v. *Incerto*, 6 Conn. Cir. Ct. 416, 274 A.2d 724, cert. denied, 160 Conn. 567, 269 A.2d 293 (1970). Even if *Foldeak* were binding authority upon this court—which it is not—it would not avail Century. In *Foldeak*, the Appellate Division of the Circuit Court explained an easement by estoppel as follows: "An easement by estoppel arises when a grantor voluntarily imposes an apparent servitude on his property and another person, acting reasonably, believes that such servitude is permanent and in reliance upon that belief either does something he would not otherwise have

[2] This concession comports with General Statutes § 16-237, entitled "No prescriptive right," which provides: *"No person or corporation building and maintaining telegraph, telephone or electric light or power wires or fixtures, or electrical wires, conductors or fixtures of any kind shall, by reason of any occupation or use of any buildings or lands for the support of the wires of such person or corporation, or by reason of such wires passing over or through any buildings or lands, acquire by the continuance of such use or occupation any prescriptive right to so occupy or use the same.* No length of possession, user or occupancy of any buildings or land, or adverse to any easement therein or right thereto belonging to a telegraph, telephone or electric light or power corporation, and used or acquired for use for its corporate purposes, shall create or continue any right in or to such land, or adverse to any such easement." (Emphasis added.)

[3] The referee held, and the trial court agreed, that SNET possessed a right that was "akin to a prescriptive easement . . . ." The trial court, in its articulation, held that "[s]ince [Mellon] is not seeking to terminate SNET's use of the pole line, he has waived his right, or *is estopped to object to the use by [Century]*, which is indistinguishable from SNET's." (Emphasis added.) For this reason, we will reach this issue notwithstanding Mellon's assertion that it "was neither plead nor briefed before the [r]eferee or the trial court."

done or refrains from doing something that he would otherwise have done." Id., 422.

This passage alludes to the three essential elements of estoppel, translated into the context of easements: (1) the party against whom estoppel is asserted must induce a belief in another person that certain facts exist; (2) the other party must change its position in reliance on that belief; and (3) that party must suffer some injury as a result of such reliance.[4] See, e.g., *Chotkowski* v. *State*, 240 Conn. 246, 268, 690 A.2d 368 (1997); *Boyce* v. *Allstate Ins. Co.*, 236 Conn. 375, 385, 673 A.2d 77 (1996); *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 768, 674 A.2d 1313 (1996); *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 246, 662 A.2d 1179 (1995). In addition, it is well settled that a party who has not engaged in "misleading conduct" cannot be estopped. See, e.g., *Boyce* v. *Allstate Ins. Co.*, supra, 383–84 ("estoppel stems from the voluntary conduct of a party whereby he is absolutely precluded . . . from asserting rights . . . against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse" [internal quotation marks omitted]); *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 564, 316 A.2d 394 (1972) ("[t]here must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud" [internal quotation marks omitted]); *Spear-Newman, Inc.* v. *Modern Floors*

---

[4] To the extent that *Foldeak* omits the third element of estoppel, it is an incorrect statement of the law. See, e.g., *Remkiewicz* v. *Remkiewicz*, 180 Conn. 114, 119, 429 A.2d 833 (1980) ("Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist."); see also *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 768, 674 A.2d 1313 (1996); *Rosenfield* v. *Metals Shelling Corp.*, 229 Conn. 771, 793–94, 643 A.2d 1253 (1994).

*Corp.*, 149 Conn. 88, 91, 175 A.2d 565 (1961) ("[e]stoppel rests on the misleading conduct of one party to the prejudice of the other").

Relying on *Foldeak*, Century argues that Mellon should be estopped from asserting that SNET possessed no authority to grant the license to Century, for the following reason: "SNET must reasonably have inferred from its long and unchallenged use of the pole line that it had an easement. SNET entered into the license agreement with Century relying on that belief. Century then strung cable on the pole line and has provided service to customers by the use of the pole line. By his conduct in acquiescing to the appearance upon which SNET and then Century relied, Mellon is estopped to challenge the existence [or the license] of the easement." We disagree.

Century has presented no evidence in support of its argument, notwithstanding the fact that it bears the burden of proof.[5] See, e.g., *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, supra, 236 Conn. 768; *Middlesex Mutual Assurance Co.* v. *Walsh*, 218 Conn. 681, 699, 590 A.2d 957 (1991). In fact, Century adduced no evidence that tends to support *any* element of estoppel, let alone all three of them. More specifically, the record before this court is devoid of any evidence that: (1) either Mellon or any of his predecessors in interest somehow misled SNET into believing that it could license the pole line—which is situated on Mellon's property—to third parties;[6] (2) SNET changed

---

[5] Century's apparent claim that Mellon must bear the burden of proving that he has "retained the right to limit third party sharing of SNET's poles" is contrary to this well settled aspect of the law of estoppel.

[6] The fact that Mellon "acquiesced" to the presence of overhead cable on his land for the purpose of receiving telephone service from SNET does not suggest that he "acquiesced" to either (1) SNET's "right" to license the use of the pole line for the benefit of the customers of a third party or (2) use of the disputed cable for the purpose of supplying television service to others. Century's argument that Mellon may not bar Century without barring

its position in reliance upon a misleading representation made by Mellon or his predecessors;[7] or (3) SNET suffered any injury as a result of such reliance. For this reason, the present appeal is readily distinguishable from *Foldeak*,[8] the only case upon which Century relies. In short, the facts contained in the record have nothing to do with either the elements of estoppel or the concerns of "equity and good conscience" that support its invocation. *Boyce* v. *Allstate Ins. Co.*, supra, 236 Conn. 384. Accordingly, Century's claims under Connecticut law must fail.

## II

We turn now to Century's claim that federal law authorizes SNET to grant the license. Century has

SNET or CL&P is implausible. In support of this proposition, Century cites the familiar doctrine that "no one shall be permitted to [premise] any claim upon his own inequity . . . ." *Boyce* v. *Allstate Ins. Co.*, supra, 236 Conn. 385. While we continue to endorse this fundamental principle of equity, we are unable to comprehend how Mellon's hands could possibly have become sullied by virtue of his desire to simultaneously obtain telephone service for his home and avoid unnecessary cable strung above his land.

[7] Because SNET possesses neither a prescriptive easement nor an easement by estoppel, we infer that the reference in the deed to "certain pole line rights of SNET" refers to the right to enter Mellon's land for purposes of maintaining and repairing the cable that supplies telephone service to Mellon. Certainly, the ambiguous language contained in the deed could not possibly have induced in SNET a reasonable belief that it possessed the right to license use of the pole for the benefit of the customers of a third party.

[8] In *Foldeak*, "the parties had reached a valid and binding agreement relative to the construction and maintenance of a driveway over an agreed easement extending in part across the defendants' property. The plaintiffs acted in *reliance* on the oral agreement for an easement and expended moneys for the improvement and maintenance of the driveway. The plaintiffs entertained a sincere *belief* that the parties had entered into a valid and binding agreement for an easement over the defendants' premises. . . . Use of the common driveway was of *substantial value* to the plaintiffs' premises and likewise would have value for future owners. It was the intention of the parties to create a permanent easement in favor of the plaintiffs across the defendants' premises." (Emphasis added.) *Foldeak* v. *Incerto*, supra, 6 Conn. Cir. Ct. 421.

The plaintiffs in *Foldeak* claimed that the defendants improperly blocked their use of the driveway by excavating a trench across it. Id., 418. The trial

advanced two separate arguments, each of which relies upon a different section of the Federal Communications Act, 47 U.S.C. § 521 et seq. We consider each argument below.

## A

Although Century has argued before this court that 47 U.S.C. § 224 (f) authorizes SNET to license use of the pole line, it neglected to either (1) raise this statute before the trial court[9] or (2) preserve its claim under this statute for our review as an alternative ground for affirmance.[10]

---

court found every element of estoppel—emphasized above—and awarded damages and injunctive relief to the plaintiffs. Id. The Appellate Division of the Circuit Court affirmed. Id.

[9] Although Century did make a reference to 47 U.S.C. § 224 (f) in footnote 2 of the brief that it submitted to the referee, the point heading under which this reference appears in the table of contents and in the brief itself is denominated as follows: "Century has the right to use the SNET Easement and Poles under 47 U.S.C. Sec. *541 (a) (2).*" (Emphasis added.) Furthermore, although Century speaks broadly of "federal legislation," it does not mention § 224 (f) anywhere in the body of its brief. Perhaps most importantly, the brief that Century submitted to the trial court—denominated Century's rebuttal to Mellon's objections to the referee's recommendation—is silent with respect to § 224 (f). This silence is highly significant when viewed through the lens of Century's explanation, in that brief, that it marshaled all of the "material from [its] briefs and argument which the [r]eferee had before him and undoubtedly relied upon."

[10] See, e.g., Practice Book § 63-4 (a) (1) ("[i]f any appellee wishes to [A] present for review alternate grounds upon which the judgment may be affirmed . . . that appellee shall file a preliminary statement of issues"); *Robert S. Weiss & Co.* v. *Mullins*, 196 Conn. 614, 617, 495 A.2d 1006 (1985); *Bielaska* v. *Waterford*, 196 Conn. 151, 156, 491 A.2d 1071 (1985); *Verrastro* v. *Sivertsen*, 188 Conn. 213, 218, 448 A.2d 1344 (1982).

Both the referee and the trial court decided this case on the basis of Connecticut law. The referee did not cite any federal statutory or decisional law. Instead, it merely included the conclusory statement that "[t]he law in Connecticut is consistent with . . . Federal [law]." The trial court adopted this approach as its own. Although the trial court did mention two federal cases in its articulation, the first was cited for the proposition that "the state law in Connecticut is consistent with the federal law and, therefore . . . preemption does not apply," while the second was cited in support of the argument that—pursuant to *state* law (specifically, General Statutes

Century may not try its case on one theory and appeal on another. See, e.g., *Levine* v. *Stamford,* 174 Conn. 234, 236, 386 A.2d 216 (1978); *Holley* v. *McDonald,* 154 Conn. 228, 235, 224 A.2d 727 (1966); *Fischer Co.* v. *Morrison,* 137 Conn. 399, 404, 78 A.2d 242 (1951). More than twenty years ago, we stated that "[i]t is this court's well-established general rule that '[o]nly in the most exceptional circumstances can and will this court consider a claim . . . that has not been raised and decided in the trial court.' " *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 466, 378 A.2d 547 (1977); accord *Statewide Grievance Committee* v. *Whitney,* 227 Conn. 829, 845, 633 A.2d 296 (1993); *Berry* v. *Loiseau,* 223 Conn. 786, 828, 614 A.2d 414 (1992); *McLaughlin* v. *Bronson,* 206 Conn. 267, 276, 537 A.2d 1004 (1988); see Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"). We will not review unpreserved claims unless "the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). *State* v. *Franko,* 199 Conn. 481, 489 n.10, 508 A.2d 22 (1986). *Scott* v. *Barrett,* 212 Conn. 217, 222, 561 A.2d 941 (1989)." (Internal quotation marks omitted.) *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.,* 216 Conn. 200, 211, 579 A.2d 69 (1990). Under certain circumstances, this "fundamental [of] appellate procedure"; *Basset* v. *Mechanics Bank,* 116 Conn. 730, 731, 166 A. 385 (1933); may even bar litigants from asserting new claims that implicate rights under the constitution. See, e.g., *Statewide Grievance Committee* v. *Whitney,* supra, 846; *Berry* v. *Loiseau,* supra, 828; *State* v. *Miller,* 186 Conn. 654, 658, 443 A.2d 906 (1982).

In the present appeal, Century has not attempted to identify any "exceptional circumstances," and our

§ 16-237)—Mellon either "waived his right, or is estopped . . . ." Neither of these references supports Century's belated invocation of 47 U.S.C. § 224 (f).

independent review of the record discloses nothing about its claim under 47 U.S.C. § 224 (f) that warrants our review.[11] Accordingly, we deem this argument waived. See, e.g., *State* v. *Fullwood*, 193 Conn. 238, 259, 476 A.2d 550 (1984); *State* v. *Bell*, 188 Conn. 406, 413, 450 A.2d 356 (1982); *State* v. *Evans*, 165 Conn. 61, 65–66, 327 A.2d 576 (1973). For these reasons, Century's claim under 47 U.S.C. § 224 (f) is not properly before us, and we decline to "resurrect it on appeal." *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 526, 656 A.2d 1009 (1995).

## B

Although both the referee and the trial court decided this case on the basis of Connecticut law,[12] Century preserved its claim under 47 U.S.C. § 541 (a) (2) in both the brief that it submitted to the referee[13] and the appendix to the brief that it submitted to the trial court.[14]

[11] Furthermore, Mellon has alerted this court to the fact that the only reported decision that has considered 47 U.S.C. § 224 (f) found that it violated the United States constitution, for the following reason: Pursuant to § 224 (f), "[a] utility . . . is required to provide any cable television system . . . with nondiscriminatory access to its poles and conduits. . . . Such access is a permanent physical occupation of property, effectively divesting a utility of its right to exclude. . . . [This] permanent occupation of a utility's poles and conduits amounts to a per se taking of property under *Loretto* [v. *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S. Ct. 3164, 73 L. Ed. 2d 368 (1982)] and the Fifth Amendment." (Citation omitted.) *Gulf Power Co.* v. *United States*, 998 F. Sup. 1386, 1395 (N.D. Fla. 1998). Before we could reach Century's claim under 47 U.S.C. § 224 (f), it would first be necessary to consider the constitutional issue, which neither party has briefed or argued.

[12] See footnote 10 of this opinion.

[13] As mentioned in footnote 9 of this opinion, one of the point headings in the brief that Century submitted to the referee was denominated "Century has the right to use the SNET Easement and Poles under 47 U.S.C. Sec. 541 (a) (2)."

[14] In this appendix, Century both cites to and quotes from § 621 (a) (2) of the Federal Communications Act, which has been codified at 47 U.S.C. § 521 et seq.

Section 541 (a) (2) provides that—with certain exceptions not relevant to the present appeal—"[a]ny franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements." Century does not claim that Mellon's land is a "public right-of-way" within the meaning of this statute, and we have previously concluded that SNET does not possess an easement.[15] Accordingly, 47 U.S.C. § 541 (a) (2) has nothing to do with the present appeal, and Century's argument to the contrary is unavailing.

The judgment of the trial court is reversed and the case is remanded with direction to render judgment for the plaintiff and for further proceedings to determine the amount of damages.

In this opinion the other justices concurred.

---

[15] See part I of this opinion.