******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DELFINA CUAPIO RODRIGUEZ ET AL.
*v.* STATE OF CONNECTICUT
(AC 35406)

DAVID TREMPER *v.* STATE OF CONNECTICUT
(AC 35570)

Beach, Keller and Prescott, Js.

*Argued September 16, 2014—officially released February 24, 2015*

(Appeal from Superior Court, judicial district of New Haven, Wilson, J.)

*Lorinda S. Coon*, for the appellant in both appeals (defendant).

*Timothy P. Pothin*, for the appellee in AC 35570 (plaintiff), with whom was *Marisa A. Bellair*, for the appellee in AC 35406 (plaintiff Delfina Cuapio Rodriguez, administratrix of the estate of Modesto Palafox Munoz).

*Opinion*

PRESCOTT, J. In these two consolidated negligence actions arising out of a serious motor vehicle accident, the defendant state of Connecticut (state) appeals from the judgments of the trial court denying motions to set aside jury verdicts rendered in favor of the plaintiffs Delfina Cuapio Rodriguez, administratrix of the estate of Modesto Palafox Munoz, and David Tremper.[1] The dispositive issue in these appeals is whether the court improperly instructed the jury regarding the scope of the state's sovereign immunity from suit in an action brought by the plaintiffs pursuant to General Statutes § 52-556.[2] Because we conclude that the court's instructions did not provide the jury with proper guidance and a clear understanding of the issues it was to decide, we reverse the judgments and remand the cases for further proceedings.[3]

The following facts and procedural history are relevant to our consideration of these appeals. These two actions arise out of a motor vehicle accident that occurred on September 2, 2008, at approximately 7 a.m. near exit 41 on the southbound portion of Interstate 95 in Orange. At that time, a tractor trailer owned by B.C. Trucking, Inc., and driven by William Clifford, struck from behind three vehicles that had slowed as they approached metal debris in the left and center travel lanes of the highway near the Marsh Hill Road overpass. The collision killed Munoz, a passenger in a Nissan Quest, and seriously injured Tremper, the driver of a Subaru Outback.[4]

On or about October 28, 2008, Tremper brought an action against Clifford and B.C. Trucking, Inc., for personal injuries arising out of the accident. In turn, Clifford and B.C. Trucking, Inc., filed an apportionment complaint against the state and Leviticus Morey, a Department of Transportation (DOT) employee who, at the time of the accident, was operating an orange DOT service truck on Interstate 95 near exit 41 as part of his duties with DOT as a service patrol operator. Specifically, Morey was tasked that morning with the responsibility to patrol the interstate to find and remedy unsafe driving conditions such as debris in the road and to assist stranded motorists.

Tremper subsequently withdrew his action against Clifford and B.C. Trucking, Inc., after settling his claims with them and exchanging mutual releases. On April 23, 2009, Tremper initiated a direct action against the state pursuant to § 52-556. In his second amended complaint, Tremper alleged that the manner in which Morey negligently "stopped and positioned his truck on the highway incident to the operation of [Morey's truck]" required Tremper to "[move] his vehicle to the center lane of the highway where vehicles had slowed in front of him," and that his vehicle was then struck in the rear

by a tractor trailer. Specifically, Tremper alleged that Morey was negligent in the following ways:

"(a) he stopped and/or positioned defendant's vehicle on a public highway in a dangerous manner without proper warning and safeguards;

"(b) he made unsafe movements upon the highway incidental to the operation of a state owned motor vehicle;

"(c) he caused defendant's vehicle to obstruct moving traffic on the highway, making it unsafe for other motorists;

"(d) he placed defendant's vehicle on the highway so as to direct traffic to the middle and left lanes, thereby creating a dangerous bottleneck;

"(e) he used defendant's vehicle to close a lane of traffic without proper warnings or safeguards, making the highway dangerous for motorists in the right lane and middle lane of travel;

"(f) he placed defendant's vehicle on the highway so as to direct traffic toward debris in the road, thereby creating a dangerous bottleneck;

"(g) he failed to follow established safety procedures and/or standards for diverting traffic on the highway while operating a state owned motor vehicle; [and]

"(h) he failed to take reasonable measures to warn motorists of the presence of defendant's vehicle in the traveled portion of the highway . . . ."

The state then filed an apportionment complaint against Clifford and B.C. Trucking, Inc. The state's apportionment complaint alleged that the injuries and damages suffered by Tremper were caused by the negligence of Clifford, and that any damages awarded should be apportioned between the state and the apportionment defendants.

On July 20, 2009, Rodriguez, individually and as the administrator of the estate of Munoz, brought a similar action, pursuant to § 52-556, against the state, alleging that Morey's actions were a proximate cause of Munoz' death and her corresponding loss of consortium as his spouse.[5] The specifications of negligence in Rodriguez' second amended complaint were identical to those set forth in Tremper's second amended complaint.

In response to the action filed by Rodriguez, on July 2, 2012, the state filed a notice of apportionment against Clifford and B.C. Trucking, Inc., alleging that the injuries suffered by the plaintiff's decedent were caused by the negligence of Clifford and B.C. Trucking, Inc., and that any damages should be apportioned between the state and those nonparties.[6]

In both actions, the state asserted by way of a special defense[7] that the "allegations of negligence which do

not relate to 'operation' of a motor vehicle by the [state] employee, within the meaning of General Statutes § 52-556, are barred by the doctrine of sovereign immunity."

These two actions were consolidated for trial and tried before a jury.[8] At trial, the following facts were essentially undisputed, some of which were disclosed by a grainy DOT video that was shown to the jury.[9] Just before the accident occurred, Morey was driving his state vehicle in the right lane of Interstate 95 southbound near the Marsh Hill Road overpass. Morey observed cars taking evasive actions to get around a piece of debris in the roadway. The debris was partly in the center and left lanes of the highway. Morey first pulled his truck onto the right shoulder of the highway beyond the location of the debris, and then backed up his vehicle along the shoulder until it was near the debris in the road. He then pulled his vehicle forward and out into the right travel lane, thereby creating a barrier obstructing further travel in that lane. Shortly thereafter, and before the accident occurred, Morey illuminated all of the emergency lights on his vehicle and the left directional arrow on the arrow board attached to his truck.[10] The plaintiffs never contended at trial that the accident was caused by any operation or movement of Morey's truck before he positioned the vehicle in the right lane and turned on the directional arrow to the left.

At trial, the plaintiffs also called James Bragdon, a traffic engineering consultant, to testify as an expert witness. The state moved to preclude his testimony on the ground that his opinions related to the "the proper procedure for traffic control related to debris on the highway," rather than the negligent operation of a state motor vehicle. Accordingly, the state argued that Bragdon should not be permitted to testify because his proffered opinions related to allegations of negligence that fell outside the limited waiver of sovereign immunity contained in § 52-556.

The court denied in part the state's motion to preclude.[11] Bragdon then testified in front of the jury regarding fundamental safety principles of temporary traffic control activities that should be employed in circumstances, such as those in the present case, in which debris obstructs a portion of the highway. Bragdon testified that these standards are contained in the Manual on Uniform Traffic Control Devices published by the Federal Highway Administration. Most significantly, Bragdon testified that Morey failed to comply with these traffic control safety standards by positioning his truck in the right lane, and then activating the left directional arrow on the arrow board, thereby directing traffic toward the center lane that was blocked. Bragdon also opined that Morey, in the exercise of due care, should have positioned his vehicle directly behind the debris and activated his arrow panel in both directions.

The state filed requests to charge on the scope of the state's sovereign immunity.[12] The state also requested a charge on the proper use of the opinions offered by Bragdon. No jury interrogatories were requested by any of the parties or submitted to the jury.

The jury returned a verdict in favor of Tremper in the amount of $225,000 in economic damages[13] and $2.5 million in noneconomic damages, and found that Clifford was 70 percent responsible and the state was 30 percent responsible. The court denied the state's motion to set aside the verdict, and, after adjudicating other posttrial motions, rendered judgment in favor of Tremper and against the state in the amount of $775,030.

The jury returned a verdict in favor of Rodriguez, in her representative capacity, in the amount of $11,288.91 in economic damages and $4 million in noneconomic damages. Again, the jury concluded that Clifford was 70 percent responsible and the state was 30 percent responsible. The court denied a motion to set aside the verdict and other posttrial motions, and rendered judgment in favor of Rodriguez and against the state in the amount of $1,203,386.67.

The state appealed from the judgments and the denial of its motions to set aside the verdicts in each case, and this court ordered the appeals consolidated. Further facts and procedural history will be set forth as necessary to address the claims of the parties.

I

The state first claims that the court improperly failed to instruct the jury on the proper scope of the state's sovereign immunity from suit. Specifically, the state contends that the court's instructions to the jury were incomplete or misleading because they failed to make clear that, under principles of sovereign immunity and the proper construction of § 52-556, the state could not be held liable for the failure of Morey to exercise due care in directing traffic around road debris or using his state vehicle as a traffic control device or protective barrier.[14] In response, the plaintiffs contend that the state's construction of the limited scope of the state's waiver of sovereign immunity contained in § 52-556 constitutes a "highly idiosyncratic and extremely narrow view of the statute," and that the trial court properly instructed the jury that it could find the state liable if it concluded (1) that the vehicle was parked "incident to travel" and (2) that the state was negligent in any of the specified ways when the vehicle was parked incident to travel. We agree with the state.

Whether the court properly instructed the jury regarding the scope of the state's waiver of sovereign immunity in § 52-556 raises a question of statutory interpretation over which our review is plenary. *Sams* v. *Dept. of Environmental Protection*, 308 Conn. 359, 377, 63 A.3d 953 (2013). "The principles that govern

statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Cashman*, 283 Conn. 644, 650–51, 931 A.2d 142 (2007).

Section 52-556 provides: "Any person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury." Thus, by its terms, the state has waived its sovereign immunity from suit for actions falling within the ambit of its provisions. *Babes* v. *Bennett*, 247 Conn. 256, 263, 721 A.2d 511 (1998).

Decisions of our Supreme Court and this court have repeatedly emphasized that statutes in derogation of sovereign immunity must be strictly construed in favor of the state, and, if there is any doubt about their meaning or intent, they must be given the effect that makes the least rather than the most change in sovereign immunity. *Stotler* v. *Dept. of Transportation*, 313 Conn. 158, 166, 96 A.3d 527 (2014) (state highway liability, as legislative waiver of state's sovereign immunity, must be strictly construed in favor of state); *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 391, 978 A.2d 49 (2009) (extratextual sources regarding legislative intent to waive sovereign immunity may not be consulted because we must interpret any uncertainty as to existence of waiver as preserving sovereign immunity); *Morneau* v. *State*, 150 Conn. App. 237, 247, 90 A.3d 1003 ("[e]xceptions to . . . doctrine [of sovereign immunity] are few and narrowly construed under our jurisprudence" [internal quotation marks omitted]), cert. denied, 312 Conn. 926, 95 A.3d 522 (2014).

In construing § 52-556, we do not write on a clean

slate. Accordingly, we begin our review of the statute with a discussion of the relevant precedent. This court first addressed the meaning of § 52-556 in *Rivera* v. *Fox*, 20 Conn. App. 619, 569 A.2d 1137, cert. denied, 215 Conn. 808, 576 A.2d 538 (1990). In *Rivera*, a state employee "drove a DOT truck to a point in the westbound lane of an interstate highway in order to assist in the cleanup of a fatal accident. He positioned the truck partly in the left travel lane of the highway and partly on the left shoulder and walked at least 500 feet to the site of that accident. He left the vehicle with its engine running and its strobe lights and four way flashers on and set up flares on the road behind the vehicle. His purpose was to alert oncoming drivers to debris from the accident that was obstructing the highway. Almost two hours later, while the employee was still working at the accident site, the decedent's vehicle collided with the truck and the decedent was killed." Id., 620. The plaintiff in *Rivera* then brought an action against the state pursuant to § 52-556. The trial court rendered summary judgment in favor of the state, concluding that, at the time of the accident, the DOT truck was not being operated within the meaning of § 52-556. Id., 621.

This court affirmed the trial court's grant of the motion for summary judgment in favor of the state. In so doing, the court in *Rivera* first recognized that there was no legislative history[15] that would shed light on whether the legislature intended that the waiver of sovereign immunity in § 52-556 include cases "where the motor vehicle is stopped, unoccupied, and being used to warn motorists of impending danger." Id., 622. The court then analyzed the statutory language, "when operating a motor vehicle," in light of the sovereign immunity principles previously discussed and concluded that that language in § 52-556 "implies a simultaneousness of negligent operation and injury, because 'when' denotes the time or exact moment at which something is done. Here, there was no coalescence in time of the operation and the injury. Without temporal congruence, the state cannot be held liable even if the negligent operation of a state owned motor vehicle by a state employee proximately caused the injury." Id., 622–23.

This court in *Rivera* recognized that, under certain circumstances, if the state vehicle caused an accident because of the location it was "parked incident to travel"; id., 624; then a plaintiff might be able to establish that the negligence occurred "when operating a motor vehicle owned and insured by the state . . . ." General Statutes § 52-556. The court in *Rivera*, however, attached great significance to the fact that the parties agreed that at the time of the collision "the DOT truck was being used as a warning signal. The truck was not parked incident to travel. It was placed on the highway, *not because [the location] was a convenient or an ordi-*

*narily appropriate place to park, but because its place-*
*ment would alert drivers to the danger ahead.*"
(Emphasis added.) *Rivera* v. *Fox*, supra, 20 Conn. App.
624. Under these circumstances, the court in *Rivera*
concluded that the state's conduct in parking the vehicle
in a particular location so as to warn oncoming drivers
about debris in the roadway did not fall within the
limited waiver of sovereign immunity contained in § 52-
556. Id.

We next examined the scope and meaning of the
state's sovereign immunity waiver in § 52-556 in *Allison*
v. *Manetta*, 84 Conn. App. 535, 854 A.2d 84 (*Allison I*),
cert. denied, 271 Conn. 931, 859 A.2d 582 (2004). In
*Allison I*, the driver of a tractor trailer that was proceed-
ing westbound on Route 44 collided with the plaintiff's
eastbound vehicle when the tractor trailer driver
maneuvered the trailer over the double line into the
eastbound lane in order to pass a state DOT truck that
was partially parked within the westbound lane. Id.,
536–37. The DOT truck had stopped in this location
because the driver observed water washing out of a
driveway onto Route 44, and he was concerned that
the water would freeze on the roadway. Id., 541. In her
complaint, the plaintiff alleged that the DOT driver had
negligently stopped the truck in a manner that partially
obstructed the westbound lane and failed to use any
means of warning to alert drivers of the obstruction to
the westbound lane. Id., 536–37.

The state moved to dismiss the action, asserting that
the plaintiff's claim did not fall within the state's limited
waiver of sovereign immunity in § 52-556 because the
truck was parked and was not being operated at the
time of the collision. Id., 537. The court granted the
state's motion to dismiss, and the plaintiff appealed. Id.

On appeal, this court reversed the trial court's grant-
ing of the state's motion to dismiss. Id., 536. In reaching
its conclusion that the court had improperly granted
the state's motion to dismiss, this court emphasized
the following facts: (1) the truck the DOT worker was
operating on the date of the accident "was the means
of locomotion he used to follow a designated route
of state highway to correct maintenance problems he
discovered"; (2) that "he parked the truck with its motor
running adjacent to the driveway so that he could exit
the truck to perform the required maintenance" to pre-
vent the water from entering the road; and (3) he had
not positioned the truck in a manner to protect himself
while he dug a ditch on the shoulder of the road. Id.,
541. This court then held: "On this set of facts, we
conclude, as a matter of law, that [the DOT worker]
was operating the truck within the meaning of § 52-
556. He had parked the truck as an activity incident to
moving it from one place to another along his desig-
nated maintenance route to fulfill his responsibilities
for the [state]. There was, consequently, a temporal

congruence between the operation of the truck and the plaintiff's injury." Id., 541–42. Accordingly, this court remanded the case for further proceedings.

On remand, the plaintiff prevailed against the state after a jury trial. *Allison* v. *Manetta*, 284 Conn. 389, 391, 933 A.2d 1197 (2007) (*Allison II*). The state again appealed to this court, and our Supreme Court transferred the appeal to itself. Id., 391 n.2. Before the Supreme Court, the state contended that the trial court improperly failed to instruct the jury that if the state truck was being used as a warning device or protective barrier at the time of the accident, the state maintained its sovereign immunity because the truck was not being "operated" for purposes of § 52-556. Id., 395. In response, the plaintiff contended that the trial court properly instructed the jury in accordance with the Appellate Court's earlier decision in *Allison I*.

The Supreme Court explicitly agreed with the state, concluding that the trial court's instructions "did not provide the jury with proper guidance and a clear understanding of the issues" because the court failed to explain to the jury that it "should consider whether the truck was being used as a warning device or as a protective barrier, and, if the jury found that it was, it must find for the [state] because the truck was not being 'operated' under § 52-556." Id., 400.

Although our Supreme Court in *Allison II* did not explicitly overrule this court's decision in *Allison I*, it was critical of *Allison I* in at least two important respects. First, the Supreme Court noted that the Appellate Court's statement in *Allison I* that "as a matter of law . . . [the state employee] was operating the truck within the meaning of § 52-556" was "overly broad" because operation was an issue to be decided by the trier of fact. (Internal quotation marks omitted.) *Allison II*, supra, 284 Conn. 401–402 n.9. Second, the trial court should not have concluded that it was bound by the Appellate Court's conclusion in *Allison I* that the truck had been parked "as an activity incident to moving it from one place to another along the [employee's] designated maintenance route" because that conclusion was based on pretrial deposition testimony rather than on an actual factual finding by the trier of fact. (Internal quotation marks omitted.) Id., 401.

Taken together, this court's decision in *Rivera* and our Supreme Court's decision in *Allison II* can be distilled into the following legal principles that the trier of fact, in applicable cases, must follow: (1) the state may be held liable pursuant to § 52-556 only if the state vehicle that is alleged to have caused the accident was being operated at the time of the accident; (2) a motor vehicle ordinarily is still being operated if it is parked incident to travel, that is, in a convenient or an ordinarily appropriate place to park; and (3) the state may still not be sued or held liable if the state vehicle is positioned or

parked in a particular location so as to warn drivers as to the danger ahead or to serve as a protective barrier.

The third principle is dictated by logic, principles of statutory construction involving statutes in derogation of sovereign immunity, and the precedent discussed previously in this opinion. A motor vehicle that is being used as a warning device or protective barrier necessarily will need to be driven to and then parked in a location that the state, in the exercise of its discretion and judgment, believes is an appropriate location for the vehicle to serve as a warning device to other motorists or as a protective barrier for its operator, other state employees, or anyone else using the roadways. Accordingly, even if the state employee who uses the truck as a warning device or protective barrier *negligently* chooses a location to park the vehicle so that it may be used as a warning device or protective barrier at that location, the state is shielded by sovereign immunity. This is necessarily so because such a location is chosen *not* because it is a convenient or ordinarily appropriate place to park, but because it is believed to be a suitable location so that the vehicle can serve as a warning device or other protective barrier. Finally, negligence claims that arise out of the manner in which a state truck was used as a warning device or protective barrier are also barred by sovereign immunity. For example, if the state places a vehicle in a location and illuminates its arrow board to serve as a traffic control device and/or warning signal, the state may not be held liable even if, in the exercise of due care, the traffic should have been directed in a different direction than that chosen by the state.

In light of these principles, we turn then to the specific jury instructions given by the court in this case to determine whether they provided the jury proper guidance and a clear understanding of the issues that it was to decide. The court instructed the jury as follows:

"I'm going to talk to you about sovereign immunity . . . and the claims that the plaintiffs have brought against the state of Connecticut. Now, our law provides that as a general rule under the doctrine of sovereign immunity, the state cannot be sued unless by legislative enactment it consents to be sued. Connecticut General Statutes § 52-556 creates a cause of action against the state and represents a statutory exception to the common-law general rule of sovereign immunity. Connecticut General Statutes § 52-556 provides in relevant part that any person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned by the state shall have a right of action against the state to recover damages for such injury. The plaintiffs have alleged that [Morey] was negligent when he was operating the state owned vehicle and therefore have sued the state of Connecticut pursuant to [this statute].

"Our law defines when operating a motor vehicle within the context of the statute as follows: Operation of a motor vehicle occurs when there is a setting in motion of the operative machinery of the vehicle, or there is movement of the vehicle, or there is a circumstance resulting from that movement or an activity incident to the movement of the vehicle from one place to another. Thus, the term 'operation' can include situations in which the vehicle is parked or standing still even if [Morey] was outside of the vehicle at the time of the accident, provided that, such a position was incident to travel. The term 'incident' or 'incidental' is defined as being likely to ensue as a chance or minor consequence or occurring merely by chance or without intention or calculation. . . .

"Thus, the plaintiffs must first prove by a preponderance of the evidence that [Morey] was operating the state vehicle on September 2, 2008, pursuant to § 52-556 as I have just defined operation for you. If you find that the plaintiffs have proven by a preponderance of the evidence that [Morey] had parked the state owned truck as an activity incident to or related to moving it from one place to another along his designated maintenance route to fulfill his responsibilities, you would then find that he was operating that vehicle under the statute even if [Morey] was standing outside the vehicle at the time of the accident, provided that such a position was incident to travel. However, you must also consider whether the truck was being used as a warning device or a protective barrier. If you find that the state owned truck was being used as a warning device or protective barrier, then you must find that it was not being operated under § 52-556 and you would then find for the defendant and proceed no further. If you find, however, that [Morey] was operating the truck as I have defined for you, you must then determine whether the plaintiffs have proven by a preponderance of the evidence that [Morey] negligently operated the truck."

Although the court's instructions did inform the jury, pursuant to *Rivera*, that the state could not be held liable if it concluded that the truck was being used as a warning device or protective barrier, the instructions did not provide proper guidance to the jury on this issue for several reasons. First, the instructions did not ask the jury to analyze whether Morey parked the vehicle in the particular place that caused the accident because it was a convenient or an ordinarily appropriate place to park or, on the other hand, whether he chose that location because he believed (negligently or otherwise) that it was an appropriate place to position the vehicle so that it could serve as warning device or protective barrier.

Second, the court's instructions did not account for the possibility that the location at which the vehicle was parked might be a convenient or an ordinarily

appropriate place to park along Morey's designated maintenance route, but also was chosen because its placement there would alert drivers to the danger ahead. Instead, the last two sentences of the instructions quoted previously treated the possibility that the vehicle was "parked incident to travel" as necessarily in conflict with or excluding the possibility that it was also positioned or parked in that location so as to serve as a warning device or protective barrier. It appears that the trial court intended its instructions to be understood in that manner because in its memoranda of decision rejecting the motions to set aside the verdicts, the court stated: "The defendant's interpretation of the statute would preclude the jury from finding that the DOT employee was operating a vehicle at any time, even when that employee is behind the wheel, with the engine running and the vehicle stopped incident to travel, if the state could also show that it was being used to slow traffic and/or as a barrier. In other words, in submitting its requests to charge, the defendant sought to have this court adopt a definition of 'operation' that would preclude a finding of operation any time a vehicle is parked, had its warning lights on to slow traffic and/or [or is being] used as a barrier, even though the truck was parked incident to travel." Contrary to the trial court's conclusion, however, this precise result is compelled by the language of *Rivera* and *Allison II*, and the principle of statutory construction that statutes in derogation of sovereign immunity must be construed narrowly to effectuate the least, rather than the most, change in sovereign immunity.

Third, the court's instructions were likely to mislead or confuse the jury on the scope of the state's sovereign immunity because the specific allegations of negligence on which the court instructed the jury included claims that plainly sought to hold the state liable for negligence in the manner in which it used the truck as a warning device or protective barrier. For example, the court instructed the jury that it could hold the state liable if it found that Morey: (1) "placed the [state's] vehicle on the highway *so as* to direct traffic to the middle and left lanes, thereby creating a dangerous bottleneck"; (2) "*used* the [state's] vehicle *to close* a lane of traffic without proper warnings or safeguards, making the highway dangerous for motorists in the right lane and middle lane of travel"; (3) "*placed* the defendant's vehicle on the highway *so as* to direct traffic toward debris in the road, thereby creating a dangerous bottleneck"; or (4) "failed to follow established safety procedures and/or standards *for diverting traffic* on the highway while operating a state owned motor vehicle . . . ." (Emphasis added.) After reviewing these specific allegations of negligence the court then stated to the jury: "If you find that [Morey] failed to exercise reasonable care while operating the state owned vehicle, *in that he operated said vehicle in one or more of the ways*

*alleged by the plaintiffs*, then you may find that [Morey] was negligent while operating the state owned vehicle as set forth in § 52-556 and therefore find the state of Connecticut negligent." (Emphasis added.)

In other words, this language suggested to the jury that it could find that the state operated the vehicle by the very conduct that would also constitute using the vehicle as a warning device or protective barrier. Most, if not all, of these specifications of negligence read to the jury by the court specifically permitted the jury to hold the state liable for a failure to exercise due care in the manner in which it used the truck as a warning device or protective barrier despite the fact that the court had just finished instructing the jury that it could not hold the state liable if the state truck was used as a warning device or protective barrier. Moreover, the language emphasized in the preceding paragraph, which immediately followed the description of the specific allegations of negligence, suggested to the jury that the vehicle was necessarily being operated when it was used in one or more of the ways alleged by the plaintiffs. Thus, the submission of these improper specifications of negligence was likely to have further confused the jury regarding the legal distinction between the operation of the vehicle (parked incident to travel), which could result in the imposition of liability on the state, and the use of the vehicle as a warning device or protective barrier, which would not permit the imposition of liability.[16]

Fourth, the clarity of these instructions was also significantly undermined by the court's decision to permit the plaintiffs' expert witness to opine to the jury that Morey: (1) failed to comply with traffic control safety standards by positioning his truck in the left lane and directing traffic, with the use of his arrow panel, toward the center lane that was blocked; and (2) should have positioned his vehicle directly behind the debris and activated his arrow panel in both directions. The court's decision to permit the jury to hear expert testimony regarding the negligent use of the vehicle as a warning device or protective barrier was likely to have further confused the jury's understanding of the court's prior instruction that sovereign immunity barred any claims arising out of the state's use of the vehicle as a warning device or protective barrier.

Finally, our conclusion that the instructions did not provide the jury proper guidance and a clear understanding of the scope of the state's sovereign immunity is buttressed by the fact that the jury submitted the following note to the court during deliberations: "We need clarification of the statute 52-556 regarding the state vehicle being used as a protective barrier or a warning device." The court declined to provide the jury any clarification. Instead, it simply directed the jury's attention to its earlier charge and to the language of

the statute, and stated that "that's the extent of my response to you." The jury's specific use of the term "clarification" strongly suggests that it was having difficulty understanding the intersection of the court's instructions on the meaning of operation and the use of the state vehicle as a warning device or protective barrier.[17] The court's decision to simply refer the jury back to its prior instruction did not ameliorate the jury's struggle to make sense of these important concepts.

In sum, because the jury did not receive complete and accurate instruction on the key issue of the scope of the state's sovereign immunity, we must conclude that the jury was likely misled.

II

We next turn to the state's claim that the court improperly denied its motions to set aside the verdicts and for judgments notwithstanding the verdicts. Specifically, the state argues that the court should have granted its motions because the evidence submitted to the jury was insufficient to prove that (1) the presence of the state vehicle in the right lane was the proximate cause of the accident and (2) that the vehicle was not being used as a warning device or protective barrier.

Even though we have already concluded that the court improperly instructed the jury on a critical issue in the case, we reach the state's insufficiency of the evidence claim because, if it were to prevail on this claim, the appropriate remedy would be to remand the cases with direction to render judgments in favor of the state. In light of the deferential standard of review applicable to motions to set aside a verdict and for judgment notwithstanding the verdict, however, we conclude that the court properly rejected the state's insufficiency of the evidence claims.

The moving party "must overcome a high threshold to prevail on either a motion for a directed verdict or a motion to set aside a judgment. Directed verdicts are not favored. . . . A trial court should direct a verdict only [if] a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing [a] trial court's decision [whether] to direct a verdict in favor of a defendant we must consider the evidence in the light most favorable to the plaintiff. . . . [The trial court] should not set aside a verdict [if] it is apparent that there was some evidence [on] which the jury might reasonably reach its conclusion . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Citation omitted; internal quotation marks omitted.) *Hicks* v. *State*, 287 Conn. 421, 432, 948 A.2d 982 (2008).

With respect to the state's contention that the jury, on the evidence presented, could not have reasonably and legally found that the collisions and injuries were

proximately caused by the presence of the vehicle in the right lane, the state asserts that there is no *credible* evidence that the state's vehicle was not visible to oncoming drivers such that they would have had difficulty in changing lanes to pass on the left. In so arguing, however, the state invites this court to make credibility determinations and ignore the testimony of at least one of the witnesses, Clifford, who testified, in essence, that he did not have adequate warning of the presence of the state's vehicle in the right lane. Credibility determinations are, of course, for the trier of fact to make, not this court. See *Schoenborn* v. *Schoenborn*, 144 Conn. App. 846, 851, 74 A.3d 482 (2013).

Moreover, one of the plaintiffs' theories of causation, which is supported by the evidence in the record, was that Morey's decision to position the truck in the right lane forced vehicles to move toward the partially obstructed center and left lanes, thereby creating a bottleneck, and, thus, was an actual and substantial cause in bringing about the injuries. If Morey had parked the state vehicle in the right travel lane solely incident to travel, in that it was a convenient or an ordinarily appropriate place to park, and did not choose that location so that the vehicle could serve as a warning device or protective barrier, then the jury, if properly instructed in accordance with sovereign immunity principles, legally would have been free to conclude that Morey's conduct was a proximate cause of the accident and resulting injuries.

Finally, the state contends that the court should have directed verdicts in its favor because, under the facts of the cases, the jury, if it had been properly instructed, logically could have reached only one conclusion, that is, that the state vehicle was being used as a warning device and to provide a protective barrier at the time of the accident. One of the specifications of negligence that was submitted to the jury asserted that Morey caused the state's vehicle to obstruct moving traffic on the highway, making it unsafe for other motorists. This narrow assertion, if proven, could allow the jury to conclude that Morey parked the vehicle solely incident to travel while he performed his maintenance duties and that it was not positioned as a warning device or protective barrier. Although a large number of witnesses did testify that Morey turned on the left directional arrow before the accident, at least two witnesses testified that they did not recall seeing the directional arrow illuminated. On this record, if the jury credited those witnesses, and if the jury had been properly instructed on the applicable law, it is reasonably possible that the jury could have ultimately concluded that the state could be held liable without violating sovereign immunity. Thus, in light of the deferential standard applicable to review of rulings on motions for a directed verdict, we cannot conclude that the court abused its discretion by denying the motions to set aside the ver-

dicts and for judgments notwithstanding the verdicts.

The judgments are reversed and the cases are remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] We refer in this opinion to Rodriguez in her representative capacity and to Tremper as the plaintiffs, and by name where necessary.

[2] General Statutes § 52-556 provides: "Any person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury."

[3] The state also claims on appeal that the court improperly (1) permitted the plaintiffs' expert to testify regarding theories of liability that do not fall within the state's waiver of sovereign immunity, and (2) denied the motions to set aside the verdicts because the evidence was insufficient to prove that the positioning of the state vehicle was the proximate cause of the accident and that the vehicle was not being used as a warning device or protective barrier. In light of our conclusion that the court's instructions were improper, we do not reach the propriety of the testimony of the plaintiffs' expert witness as a separate claim of error. We do briefly discuss, however, the expert's testimony in light of our conclusion that the court's decision to permit such testimony was likely to have generated additional confusion over the meaning of its instructions regarding the scope of the state's waiver of sovereign immunity. The state's claims regarding the sufficiency of the evidence are discussed in part II of this opinion.

[4] One or more of the occupants of the third vehicle filed a personal injury action arising out of the accident, but that action was subsequently withdrawn and is not at issue in these appeals.

[5] The loss of consortium claim was subsequently withdrawn by Rodriguez after the state moved to dismiss it on sovereign immunity grounds. All of Rodriguez' remaining claims were asserted in a representative capacity.

[6] Because Tremper and Rodriguez had settled and released their claims against Clifford and B.C. Trucking, Inc., sometime before July 2, 2012, the state filed this notice, rather than an apportionment complaint, pursuant to General Statutes § 52-102b (c), which provides in relevant part: "If a defendant claims that the negligence of any person, who was not made a party to the action, was a proximate cause of the plaintiff's injuries or damage and the plaintiff has previously settled or released the plaintiff's claims against such person, then a defendant may cause such person's liability to be apportioned by filing a notice specifically identifying such person . . . and the fact that the plaintiff's claims against such person have been settled or released. . . ."

[7] Importantly, our cases have long recognized that sovereign immunity from suit protects the state from being "required to litigate at all, as opposed to its right not to be ultimately subjected to liability . . . ." *Shay* v. *Rossi*, 253 Conn. 134, 167, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003). We note that the state did not move to dismiss these actions at their outset despite the fact that, if the doctrine of sovereign immunity applies in these cases, the state should not have been required to litigate these claims at all. Instead, the state raised sovereign immunity as a special defense. As a result, delaying resolution of the colorable claims of sovereign immunity in these cases until the completion of trial may well have vitiated, at least in part, the doctrinal underpinnings of sovereign immunity, that is, "that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property." (Internal quotation marks omitted.) *Pamela B.* v. *Ment*, 244 Conn. 296, 328, 709 A.2d 1089 (1998). In fact, our Supreme Court has recently recognized that, unlike unresolved factual issues concerning a governmental immunity claim, which can be decided by a jury, immunity from suit on the basis of sovereign immunity implicates subject matter jurisdiction and should be resolved prior to trial. *Edgerton* v. *Clinton*, 311 Conn. 217, 227 n.9, 86 A.3d 437 (2014).

[8] We also note that the state did not move to strike these actions from the jury trial list. As our Supreme Court noted in *Canning* v. *Lensink*, 221 Conn. 346, 354, 603 A.2d 1155 (1992), "[s]ome statutory waivers of sovereign immunity enacted by the legislature expressly preclude a right of jury trial.

. . . One statute provides such a right explicitly. . . . In the absence of such a specification, we have concluded that the legislature intended that the action should be tried *without a jury*. When the state, by statute, waives its immunity [from] suit . . . the right to a jury trial cannot be implied, but rather, must be affirmatively expressed." (Citations omitted; emphasis added; internal quotation marks omitted.) We are cognizant that § 52-556 appears to contain no language, express or implied, that grants a right to a jury trial to a claimant seeking to recover under its provisions.

The failure of the state to seek dismissal of these actions at the outset of the proceedings, and to allow a jury to determine critical factual issues pertaining to the state's sovereign immunity, has complicated this court's ability to assess the applicability of the doctrine in these cases in two ways. First, because sovereign immunity implicated the trial court's subject matter jurisdiction over the actions, the court never made any specific factual findings, following an evidentiary hearing on a motion to dismiss, that were necessary to determine whether these actions properly fell within the state's limited waiver of sovereign immunity from suit such that the cases could proceed to trial. Second, because the cases were ultimately submitted to a jury without any jury interrogatories, this court's ability to determine whether the jury found sufficient facts to bring these actions within the state's waiver of sovereign immunity is much more difficult. See footnote 16 of this opinion. In any event, we need not decide at this juncture whether a plaintiff bringing an action pursuant to § 52-556 is entitled to a jury trial.

[9] The video, which we have viewed, was marked as plaintiffs' exhibit 28.

[10] Although a number of witnesses testified that Morey illuminated the warning lights on the vehicle, including the left directional arrow on the arrow board, before the accident occurred, two of the plaintiffs' witnesses, Hugo Zecuamunoz and Clifford, testified that they did not see the flashing left directional arrow before the accident. (Clifford did testify that he saw other lights flashing on the DOT truck.) Thus, the plaintiffs assert on appeal that it was factually disputed at trial whether the directional arrow was activated at the time of the accident. This assertion, however, is patently inconsistent with the plaintiffs' theory of the case and the arguments they made to the jury that Morey's left directional arrow was illuminated before the accident and that it was negligent of him to direct traffic toward the center and left lanes based on the facts and circumstances. For example, in his opening statement, counsel for Rodriguez stated to the jury: "What Mr. Morey did is simply not safe. What he did do was position himself straddling the shoulder and the right lane, making that lane impassable. He then puts on his lights and that left arrow, and he directs traffic into the center . . . ." He repeated this claim during closing arguments. Counsel for Tremper asserted during closing arguments: "[Morey] chose to obstruct the only unobstructed lane and turn the arrow on directing them towards the debris . . . ." He also argued: "[T]urning on that arrow light is what caused this bottleneck . . . ." Indeed, most of the plaintiffs' theories of liability were dependent upon the plaintiffs' factual contention that Morey had illuminated the left directional arrow after positioning the vehicle in the right lane. The plaintiffs, however, may not now have it both ways. It is well settled that a party "may not try its case on one theory and appeal on another." *Mellon* v. *Century Cable Management Corp.*, 247 Conn. 790, 799, 725 A.2d 943 (1999).

[11] The court, however, indicated that it would not permit Bragdon to testify on the ultimate issues of whether Morey was negligent or whether his negligence was the proximate cause of the collision between Clifford and the other vehicles.

[12] The state conceded that, at the time of the accident, it owned and insured the truck used by Morey.

[13] The court subsequently ordered that Tremper's economic damages be remitted to $151,694.14. That ruling is not challenged on appeal.

[14] This claim was preserved for appeal because the state submitted proposed requests to charge and took an exception to the charge given by the court on the grounds that it did not properly guide the jury on the scope of the state's sovereign immunity from suit. Specifically, the state asked the court to instruct the jury as follows: "If you find from the evidence that the plaintiffs have proven that [Morey] parked the truck incident to his driving that truck along his regular patrol route to fulfill his job duties of removing debris from the highway, that is, it was parked where it was because that was a convenient or an ordinarily appropriate place to park to permit Mr. Morey to remove the debris from the highway, then you may find that there was operation of that vehicle under General Statutes § 52-556. On the other

hand, if you find from the evidence that at or about the time of the subject accidents the service patrol truck was being used as a traffic control device to warn oncoming motorists of the presence of debris in the highway to slow down traffic because of that debris and/or to permit [Morey] to retrieve that debris, to close the right lane or that it was being used as a barrier to protect [Morey] while exiting the service patrol truck into the right lane for purposes of removing the debris from the highway, then you must find that the service patrol truck was not being operated within the meaning of General Statutes § 52-556 and return verdicts in favor of the [state]."

[15] *Rivera* was decided before *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, supra, 293 Conn. 391, in which our Supreme Court held that resort to extratextual sources is inappropriate to resolve any ambiguities regarding the scope of a legislative waiver of sovereign immunity.

[16] It is true, as the plaintiffs suggest, that one or more of the other specifications of negligence that were submitted to the jury do not as directly implicate the state's negligent use of the state vehicle as a warning device or protective barrier but instead arguably focus on Morey's alleged negligence in parking the vehicle solely as an incidence to his travel to the scene. For example, the court instructed the jury that the state could be held liable if Morey "stopped and/or positioned [state's] vehicle on a public highway in a dangerous manner without proper warning and safeguards . . . ." On its face, this allegation could be construed simply as a claim that Morey failed to exercise reasonable care in choosing an appropriate place to park incident to travel. Even this specification of negligence, however, does not necessarily preclude the possibility that this alleged conduct was performed as part and parcel of the use of the truck as a warning device or protective barrier.

We reject the plaintiffs' attempted reliance on the general verdict rule. The general verdict rule provides that "if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party." (Internal quotation marks omitted.) *Curry* v. *Burns*, 225 Conn. 782, 786, 626 A.2d 719 (1993). Under such circumstances, if any ground that supports the verdict is not successfully attacked on appeal, the judgment must be affirmed. Id. Contrary to the plaintiffs' claim here, decisions of our Supreme Court have repeatedly emphasized that the general verdict rule does not apply to different specifications of negligence. See, e.g., id.; *Pedersen* v. *Vahidy*, 209 Conn. 510, 513, 552 A.2d 419 (1989). The plaintiffs' attempted reliance on *Socci* v. *Pasiak*, 137 Conn. App. 562, 574–75, 49 A.3d 287, cert. denied, 307 Conn. 919, 54 A.3d 563 (2012), does not advance their general verdict claim because that case did not involve different specifications of negligence, as in the present case, but instead involved application of the general verdict rule to different causes of action pleaded in different counts of a complaint.

[17] Clarify means "to free of confusion" or "to make understandable." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003).